# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

BBK TOBACCO & FOODS, LLP, D.B.A. HBI INTERNATIONAL,

                        Plaintiff,

      v.

7TH ST VILLAGE FARM INC.; EAST VILLAGE FARM & GROCERY, INC.; VILLAGE CONVENIENCE; 2ND AVENUE CONVENIENCE STORE INC.; GALAXY WHOLESALE; CHOLULA II DELI & GROCERY INC.; WINDHORSE GAS STATION, INC.; ESSA DELI GROCERY CORP; ALPHABET CITY INC. I; NILU U. PATEL; PATEL, NILU U.; JOHN DOES 1-10; AND XYZ COMPANIES 1-10,

                        Defendants.

**CIVIL ACTION NO. 17-cv-4079-GHW-BM**

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT GALAXY VI CORP., D.B.A. GALAXY WHOLESALE

VENABLE LLP

Marcella Ballard (MBallard@Venable.com)
Victoria R. Danta (VRDanta@Venable.com)
Maria R. Sinatra (MRSinatra@Venable.com)
1270 Avenue of the Americas, 24th Fl.
New York, NY 10020
Tel.: 212.307.5500
Fax: 212.307.5598

*Attorneys for Plaintiff BBK Tobacco & Foods, LLP, d.b.a. HBI International*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 1

UNDISPUTED FACTS ...................................................................................... 3

    I.     HBI's RAW® Brand Products ............................................................ 3

    II.    HBI's RAW® Trademarks And The RAW® Trade Dresses ..................... 4

    III.   Galaxy Wholesale's Willful Counterfeiting ..................................... 5

    IV.   Additional Facts Confirming Willfulness ......................................... 8

LEGAL STANDARD ........................................................................................ 13

ARGUMENT ................................................................................................... 13

    I.     There Is No Dispute Of Material Fact That Galaxy Wholesale's
         Purchases/Sales Of Counterfeit RAW® KSS And RAW® Rolling Trays
         Violated The Lanham Act ................................................................ 13

         a.    The RAW® Trademarks And RAW® Trade Dresses Are Valid And
             Entitled To Protection ......................................................... 14

         b.    Galaxy Wholesale Used The RAW® Trademarks And RAW® Trade
             Dresses In Commerce, In Connection With The Sale Of Counterfeit
             Goods, Without HBI's Consent .............................................. 15

         c.    Galaxy's Sale Of Counterfeit RAW® Products Is Likely To Cause
             Confusion ........................................................................... 16

         d.    False Designation of Origin and Unfair Competition ................ 18

    II.    By Selling Counterfeit RAW® Products To New York Consumers,
         Galaxy Is Liable For Violating New York General Business Law § 349 ........ 18

    III.   Galaxy Is Liable For Unfair Competition Under New York Common
         Law .............................................................................................. 20

    IV.   Galaxy Wholesale Acted Willfully .................................................. 21

    V.    HBI Is Entitled To Statutory Damages Under 15 U.S.C. § 1117(c) ............ 25

CONCLUSION ................................................................................................ 25

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*1-800 Contacts, Inc. v. WhenU.Com, Inc.*,
414 F.3d 400 (2d Cir. 2005).................................................................................. 15

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)............................................................................................... 13

*Bambu Sales, Inc. v. Ozak Trading Inc.*,
58 F.3d 849 (2d Cir. 1995)..................................................................................... 27

*Burberry Ltd. v. Euro Moda, Inc.*,
No. 08-cv-5781, 2009 WL 1675080 (S.D.N.Y. June 10, 2009) ................................. 13, 21, 24, 26

*Cartier Int'l B.A. v. Ben-Menachem*,
No. 06-cv-3917, 2008 WL 64005 (S.D.N.Y. Jan. 3, 2008) ............................................ 17, 18, 24

*Chloe v. Queen Bee of Beverly Hills, LLC*,
No. 06-cv-3140, 2011 WL 3678802 (S.D.N.Y. Aug. 19, 2011)..................................... 13

*Coach, Inc. v. Allen*,
No. 11-cv-03590, 2012 WL 2952890 (S.D.N.Y. July 19, 2012)............................................ 13, 29

*Consolidated Cigar Corp. v. Monte Cristi de Tabacos*,
58 F. Supp. 2d 188 (S.D.N.Y. 1999)...................................................................... 20

*Fendi Adele S.R.L. v. Filene's Basement, Inc.*,
96 F. Supp. 2d 368 (S.D.N.Y. 2010)...................................................................... 18

*Fendi Adele, S.R.L., v. Ashley Reed Trading, Inc.*,
507 Fed. App'x 26 (2d Cir. 2013).................................................................. 25, 27, 28

*Girl Scouts of U.S.A. v. Bantam Doubleday Dell Publ'g Grp., Inc.*,
808 F. Supp. 1112 (S.D.N.Y. 1992)........................................................................ 24

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*,
286 F. Supp. 2d 284 (S.D.N.Y. 2003)..................................................................... 19

*Island Software & Computer Serv., Inc. v. Microsoft Corp.*,
413 F.3d 257 (2d Cir. 2005)................................................................................... 25

*Johnson & Johnson v. Azam Int'l Trading*,
07-cv-4302, 2013 WL 4048295 (E.D.N.Y. Aug. 9, 2013) ....................................... 22

# TABLE OF AUTHORITIES
## (CONT'D)

**Page(s)**

*Koch v. Greenberg*,
No. 07-cv-9600, 2008 WL 4778813 (S.D.N.Y. Oct. 31, 2008)................................................... 22

*Krasnyi Oktyabr, Inc. v. Trilini Imps.*,
No. 05-cv-5359, 2007 WL 1017620 (E.D.N.Y. Mar. 30, 2007)........................................... 21, 22

*Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*,
192 F.3d 337 (2d Cir. 1999)........................................................................................... 15

*Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*,
378 F. Supp. 2d 448 (S.D.N.Y. 2005)................................................................................ 15, 20

*Maurizio v. Goldsmith*,
230 F.3d 518 (2d Cir. 2000)........................................................................................... 21

*Ontel Prods. Corp. v. Airbrushpainting Makeup Store*,
2017 WL 1969681 (S.D.N.Y. May 12, 2017) ..................................................................... 14

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
85 N.Y.2d 20 (1995) ...................................................................................................... 22

*Philip Morris USA Inc. v. Cowboy Cigarette Inc.*,
No. 03-cv-02292, 2003 WL 22852243 (S.D.N.Y. Dec. 2, 2003) ................................................ 16

*Philip Morris USA Inc. v. Felizardo*,
No. 03-cv-5891, 2004 WL 1375277 (S.D.N.Y. June 18, 2004) ................................................ 24

*Polaroid Corp. v. Polarad Elecs. Corp.*,
287 F.2d 492 (2d Cir. 1961)........................................................................................... 20

*Porter v. Quarantillo*,
722 F.3d 94 (2d Cir. 2013)............................................................................................. 14

*River Light V., L.P. v. Lin & J Intern., Inc.*,
No. 13-cv-3669, 2014 WL 6850966 (S.D.N.Y. Dec. 4, 2014) .................................................. 18

*Scott v. Harris*,
550 U.S. 372 (2007)........................................................................................................ 25

*Scotto v. Almenas*,
143 F.3d 105 (2d Cir. 1998)......................................................................................... 14, 26

*Spin Master Ltd. v. Alan Yuan's Store*,
No. 17-cv-7422, 2018 WL 3212460 (S.D.N.Y. June 29, 2018) ................................................ 17

## TABLE OF AUTHORITIES
### (CONT'D)

**Page(s)**

*Tiffany (NJ) Inc. v. eBay Inc.*,
600 F.3d 93 (2d Cir. 2010)................................................................................................ 25

**Statutes**

15 U.S.C. § 1114 ............................................................................................................... 14

15 U.S.C. § 1115(a) ........................................................................................................... 15

15 U.S.C. § 1117(c) ........................................................................................................... 29

15 U.S.C. § 1125(a) ........................................................................................................... 14

15 U.S.C. § 1127 ............................................................................................................... 17

**Rules**

F.R.C.P. 30(b)(6) ............................................................................................................... 10

Fed. R. Civ. P. 56(c) ......................................................................................................... 13

## PRELIMINARY STATEMENT

This Motion for Summary Judgment establishes there is no genuine issue of material fact that Galaxy Wholesale[1] bought and sold counterfeit RAW® rolling papers and rolling trays, and violated: (1) Section 32(I) of the Lanham Act (15 U.S.C. § 1114); (2) Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); (3) New York General Business Law § 349; and (4) New York common law. For over a decade, HBI has been the exclusive maker and original U.S. distributor of all authentic RAW® rolling papers and accessories. HBI brands its products "RAW" to evoke the natural wood pulp, hemp, acacia gum adhesives, and other ingredients used to make the papers. As sales have grown, so has HBI's fame/reputation. Through the RAW® products and source identifiers, HBI has developed a brand centered around cigarette papers, smoking culture, and the particular smoking culture that HBI consumers enjoy.

HBI registered the RAW® Trademarks and Trade Dresses appearing on all authentic RAW® rolling papers and accessories sold by HBI in the United States. These federal registrations are *prima facie* evidence that HBI exclusively owns the RAW® source identifiers, and that they are valid and enforceable.

Galaxy Wholesale is a retail/wholesale business in Brooklyn, New York, and the only responding defendant not to settle this lawsuit. To obtain a pricing discount of at least $10 per box of rolling paper (and often, more), and an unknown discount on rolling trays, it deliberately bought and sold low-quality fakes of the RAW® Trademarks and Trade Dresses on fake RAW® rolling papers and rolling trays. Galaxy then sold and marketed the fakes as authentic goods made by HBI in Alcoy, Spain. It knowingly deceived HBI customers, who associate the RAW® brand with unique qualities like natural and organic ingredients, which shoddy counterfeits lack.

---

[1] Defined as Defendant Galaxy VI Corp., d.b.a. Galaxy Wholesale; also referred to as "Galaxy."

There can be no doubt about Galaxy Wholesale's counterfeiting, as HBI agents bought confirmed counterfeit RAW® rolling papers and rolling trays directly from Galaxy Wholesale, and Galaxy Wholesale never challenged HBI's evidence of counterfeiting apart from unsupported and conclusory denials. Likewise, there can be no doubt about willfulness - or willful blindness - because of glaring red flags, like the vastly below-market pricing; a direct customer relationship with HBI; knowledge of proper authorized distribution channels; and intentionally poor recordkeeping. The only true dispute is the amount of HBI's damages, as throughout the litigation, Galaxy Wholesale has unjustifiably withheld basic documents and information, including purchase and sales records related to RAW® products, and profits and revenue figures from buying and re-selling counterfeit RAW® products. Galaxy Wholesale never implemented a written litigation hold – or possibly any litigation hold – as discussed below. Thus, it blames "inadequate recordkeeping" (and spoliation) for the failure to disclose information. It also blames youth and inexperience, but the evidence shows it has existed since 1997; is/has been represented by counsel; has operated other business ventures before this venture over the span of two decades; and has at least one affiliate smoke shop in the same industry in the same area in Brooklyn, New York.

There is only one credible explanation for Galaxy Wholesale's failures:  it willfully counterfeited HBI's RAW® products, and then, it willfully disregarded its obligations to HBI and the Court, to intentionally cover up its counterfeiting.

This Motion for Summary Judgment could put an end to the litigation, Galaxy's counterfeiting, and its recalcitrance. If the Court grants the Motion, then at an appropriate time, HBI would move for statutory damages, and attorneys' fees and costs (including investigative

costs), because the issues in the case have been simple from the start, and yet, Galaxy Wholesale blocked HBI's attempts to get meaningful relief every step of the way.

## **UNDISPUTED FACTS**

The following facts come from the accompanying Rule 56.1 Statement of Undisputed Material Facts ("SUMF"), with exhibits and are summarized below.

### I.     **HBI's RAW® Brand Products**

HBI designs, manufactures, imports, markets, and sells the RAW® brand of rolling paper products and accessories like rolling trays. *See* SUMF ¶ 1 (citing Decl. of Ian Kobe I.S.O. Pl.'s Mot. for Prelim. Inj. and Expedited Disc. (Exhibit 1 thereto) (hereafter, "Kobe Decl.")). Authentic RAW® rolling papers come in several varieties that differ in size, composition, thickness, and like qualities, including RAW® King Size Slim rolling papers, which HBI sells in boxes for between $38.70 and $40.50 each ("RAW® KSS"). *See id.* ¶¶ 2 & 3 (citing Kobe Decl. ¶¶ 11 & 12); *see also id.* (Danta Decl., Exhibit I (PLF000009-PLF000010 (Mar. 24, 2017 Invoice to Galaxy Wholesale including RAW® KSS)). Authentic RAW® rolling papers of all varieties are: (i) exclusively made in Alcoy, Spain; (ii) subject to HBI's strict quality control standards; (iii) made from high-quality, natural ingredients; and (iv) contain pure natural fibers. *See* SUMF ¶ 4 (citing Kobe Decl. ¶¶ 13, 27 & 28). This is important to HBI's customers, who generally prefer RAW® papers to other brands because of their unique features. *See id.* ¶ 5 (citing Kobe Decl. ¶¶ 8 & 9). RAW® rolling trays are accessories sharing design elements with authentic RAW® rolling paper packaging to increase brand recognition. *See id.* ¶ 6 (citing Kobe Decl. ¶¶ 33 & 37). Since the RAW® brand launched in the early 2000s, it has established strong and growing sales; a strong social media presence; strong brand recognition; and a brand centered around smoking, smoking culture, and the particular smoking culture that HBI

consumers enjoy. *See id.* ¶ 7 (citing Kobe Decl. ¶¶ 14-16, 17-22); *see also* Danta Decl., Exhibit I thereto (PLF000019 – PLF000148 (articles discussing consumer recognition of RAW® brand), PLF001392-PLF001428 (website and social medial promotion of RAW® brand)). HBI/RAW® thus have become famous among consumers, and are synonymous with qualities that are important to consumers.

## II.     **HBI's RAW® Trademarks And The RAW® Trade Dresses**

HBI owns exclusive rights to a family of registered and common-law "RAW" trademarks and trade dresses that are registered for and/or used on a variety of goods, including rolling papers and rolling trays. *See* SUMF ¶ 8 (citing Kobe Decl. ¶¶ 24 & 25, 33-35, Exhibits A-C thereto (trademark registration certificates and photographs of common-law product packaging trade dress)). The RAW® Trademarks, as defined in the SUMF, appear on the Principal Register in the U.S. Patent and Trademark Office, and are presumed valid and enforceable. *See id.* ¶ 9 (citing Kobe Decl. ¶¶ 24 & 25, Exhibit A thereto). HBI also owns common-law trade dress in the distinctive, non-functional appearance of RAW® KSS product packaging ("RAW® KSS Trade Dress"). As detailed in the SUMF, the RAW® KSS Trade Dress features colors like red, brown, and tan; one or more of the RAW® Trademarks; the phrase "Made in Alcoy, Spain"; and raster images, or photographs, of twine wrapped around the package, among other distinctive/non-functional designs. *See id.* ¶ 11 (citing Kobe Decl. ¶ 33, Exhibit B thereto). HBI also owns U.S. Registration Nos. 3422929 and 4647824 (together, the "Registered RAW® Trade Dresses"). *See id.* ¶ 12 (citing Kobe Decl. ¶¶ 34-36, Exhibit C thereto). Together with the RAW® KSS Trade Dress, the "RAW® Trade Dresses" give the RAW® product packaging its distinctive and recognizable look-and-feel. *See id.* ¶ 13 (citing Kobe Decl. ¶¶ 37-40).

### III.   **Galaxy Wholesale's Willful Counterfeiting**

Galaxy Wholesale buys and re-sells smoking products, including rolling papers and rolling trays, at a storefront at 746 Myrtle Avenue in Brooklyn, New York. *See* SUMF ¶¶ 14 & 15; *see also* Danta Decl., Exhibit O thereto (Trans. of Videotaped Dep. of Said Khamis Ghnaim for Def. Galaxy Wholesale) ("Dep."), pg. 40:25—41:4, 143:5—144:6. As part of its business, Galaxy Wholesale sells RAW® rolling papers, including RAW® KSS. *See id.* ¶¶ 16-20 (citing Dep. at pg. 42:9—43:11, 46:13-17, 48:9-11, 49:6-12, 51:8-15, 20-25). It also sells RAW® rolling trays in three sizes. *See id.* ¶¶ 21-23 (citing Dep. at pg. 45:7-15, 51:20-25, 52:2-8). Of all the rolling paper brands Galaxy Wholesale sells, RAW® is the most popular brand. *See id.* ¶ 18 (citing Dep. at pg. 49:6-12). Before this lawsuit, Galaxy Wholesale knew where to buy authentic RAW® products, because Galaxy Wholesale researched and decided to buy certain RAW® products direct from HBI. *See id.* ¶¶ 24-27 (citing Dep. at pg. 56:19-21, 57:11—58:4, 60:3-13, 60:25—61:5, 108:25—110:5); *see also* Danta Decl., Exhibit I thereto (PLF000007 – PLF000018 (HBI sales invoices to Galaxy)). After forming a direct customer relationship, it still sought out and bought cheaper, counterfeit RAW® products from unauthorized sources. *See id.* ¶¶ 31 & 32 (citing Dep. at pg. 112:6—113:24, 116:5-7, 125:12-18, Dep. Exhibits 4 & 5). In seeking out sources other than HBI, offering lower prices than HBI, Galaxy understood, or at least assumed the risk, that it was buying counterfeit goods.  *Id.*

According to Galaxy's scant records, the first time it purchased RAW® products for resale from an unauthorized source was in September 2016. *See id.* ¶¶ 28-30 (citing Dep. at pg. 141:19—142:23, 172:6-11, 173:12-20, Dep. Exhibit 4). Allegedly, this was a "preparatory" purchase, because Galaxy Wholesale states it started operating in January 2017 (although it was founded in 1997) *See id.*; *see also* Danta Decl., Exhibit D thereto (including non-Bates-stamped

copy of Certificate of Incorporation). Through a transaction with wholesaler My Import Warehouse, it bought 60 boxes of RAW® KSS for $28.50, which is a per-unit price $10 less than HBI's price. *See* SUMF ¶¶ 28-30 (citing Dep. at pg. 141:19—142:23, 172:6-11, 173:12-20, Dep. Exhibit 4). Galaxy is a company that makes its money by buying low and selling high (*id.* ¶ 33 (citing Dep. at pg. 120:3-14)), so it is implausible that Galaxy ignored such a stark price difference.

From May to December 2017, Galaxy Wholesale continued buying cheaper, presumably counterfeit RAW® rolling papers and trays from sources other than HBI at prices as low as $22 per box of RAW® KSS (compared with $38.70 per box for equivalent authentic products from HBI), and an unknown price difference for rolling trays (because Galaxy Wholesale produced incomplete records concerning rolling trays). *See id.* ¶¶ 31-37 (citing, *inter alia*, Dep. at pg. 279:15-21, Dep. Exhibit 5 (Galaxy Wholesale document production to HBI, including invoice from Metro General Enterprise to Galaxy listing "RAW 50 classic" for $22.00 each)). Galaxy Wholesale paid for most of the products in cash, never asking why cash was required (*see id.* ¶¶ 35 & 36 (citing Dep. at pg. 194:22—194:16)); kept self-described "insufficient" records (*see id.* ¶ 82 (citing Dep. at pg. 219:4-17, 219:24—220:6); and did not get/save receipts (*see id.* ¶ 40 (citing Dep. at pg. 176:7-13)). It also never asked where its sources bought the RAW® products (*see id.* ¶ 34 (citing Dep. at pg. 120:3-14)), prioritizing low prices over doubtful authenticity.

On March 2, 2017, HBI confirmed Galaxy Wholesale's counterfeiting when its investigator bought (1) one pack of suspect-counterfeit RAW® KSS rolling papers (Classic variety, $2.00 each), and (2) one extra small rolling tray for $10.00 each/total. *See id.* ¶ 41 (citing Decl. of John Hood I.S.O. Pl.'s Mot. for Prelim. Inj. and Expedited Disc. ("Hood Decl."), ¶ 14, Exhibit A thereto (hand-written receipt, No. 7083540, dated March 2, 2017)); *see also* Dep.

Exhibit 7 (same invoice produced by Galaxy)). HBI investigators logged the products into evidence and mailed them to HBI headquarters in Phoenix, Arizona. *See id.* ¶ 42 (citing Hood Decl. ¶ 15, Exhibit A thereto (true and correct copy of FedEx Tracking information)). HBI inspected the products and confirmed they are counterfeit and could not have been made by HBI. *See id.* ¶ 43 (citing Kobe Decl. ¶¶ 46-50).

For example, Galaxy's counterfeit RAW® KSS contained many physical differences from authentic products, and displayed confirmed counterfeit versions of the RAW® Trademarks and RAW® Trade Dresses that appear on those products. *See id.* ¶¶ 43-45 (citing Kobe Decl. ¶¶ 45-50, 72); *see also* Danta Decl., Exhibit I thereto (PLF000006 (HBI counterfeit report)). The papers themselves are of inferior quality compared with authentic papers, and because they are not made by HBI, they are not subject to any of HBI's quality control standards. *See* SUMF ¶ 45 (citing Kobe Decl. ¶ 72). The differences create a risk of irreparable harm, especially to consumers who expect RAW® papers to be "natural," "organic" and containing the "purest natural fibers." *Id.* ¶ 46 (citing Kobe Decl. ¶¶ 72 & 73). The rolling tray was confirmed counterfeit, because it had pronounced rounded corners, when authentic RAW® rolling trays in the same size have slightly rounded corners. *See id.* ¶¶ 44 & 45 (citing Kobe Decl. ¶¶ 48-50). HBI knows consumers are harmed and deceived, because over time it received customer complaints that papers determined to be counterfeit feel and roll differently, burn differently, and taste "hotter" than authentic papers when used. *See id.* ¶ 47 (citing Kobe Decl. ¶ 74). Customers mistakenly attributed these defects to HBI, because of the unauthorized use of counterfeit RAW® Trademarks and Trade Dresses. *See id.* ¶ 48 (citing Kobe Decl. ¶¶ 75-77).

**IV.**     **Additional Facts Confirming Willfulness**

Galaxy has consistently disregarded obligations to HBI and the Court. There are many examples of operational and litigation misconduct confirming willful counterfeiting. For example, operationally, Galaxy Wholesale chose to keep what it described as "insufficient" purchase and sales records for RAW® products. It testified it only keeps a hard copy of purchasing invoices, with no electronic invoices or back up. *See id.* ¶ 49 (citing Dep. at pg. 101:2-8, 102:13-21). It often buys products from its sources without receiving an invoice, receipt, or any other documentation. *See id.* ¶ 50 (citing Dep. at pg. 197:4-14). It maintains sales records in hard-copy format in inventory books, and no electronic sales records. *See id.* ¶ 51 (citing Dep. at pg. 73:19—75:23, 100:19—101:8). When it prepares a sales invoice, it often leaves off the customer name, address, and other contact information. *See id.* ¶ 52 (citing Dep. at pg. 73:19—75:23). At least one of the hard-copy inventory books was destroyed, and there is no backup system to confirm the contents. *See id.* ¶ 53 (citing Dep. at pg. 77:9—78:7). Concerning daily and weekly sales, Galaxy records them in an Excel® spreadsheet without any breakdown of the items sold. *See id.* ¶ 54 (citing Dep. at pg. 81:12—82:15). From the spreadsheet, Galaxy Wholesale cannot determine its own profits or revenues per product, and accordingly has no idea how many items of RAW® rolling papers/rolling trays it sold; what its revenues were; what its profits were; and accordingly, what HBI's damages were from selling counterfeit products. *Id.*

From a litigation perspective, Galaxy Wholesale was never forthcoming about basic information, including information so basic it defies belief (*e.g.*, who owns Galaxy Wholesale?). On October 19, 2017, HBI served Galaxy with its First Set of Document Requests and First Set of Interrogatories.  *See id.* ¶ 55 (citing Danta Decl., Exhibit A thereto attaching Discovery Requests). HBI's counsel also informally requested summary reports showing total volume of

purchases and sales of RAW® products, with profit and revenue figures, so HBI could attempt to make a settlement demand based on approximate damages. *See id.* ¶ 56 (Danta Decl. at ¶ 6). Galaxy Wholesale's counsel agreed to provide a summary report, but nothing was produced. *See id.* ¶ 57 (Danta Decl. at ¶ 6) Galaxy's initial response/objection deadline was November 20, 2017, but HBI extended the deadline till January 2, 2018 in good faith, based on representations that Galaxy Wholesale just needed more time. *See id.* ¶¶ 58 & 59 (Danta Decl. at ¶ 7).  However, Galaxy Wholesale missed the extended deadline, and it did not ask for/obtain an extension. *See id.* ¶ 60 (Danta Decl. at ¶ 8). It also never gave any explanation for the failure to respond or object. *See id.*

Eventually, Galaxy served deficient responses and untimely objections to the HBI's requests. *See id.* ¶ 61 (Danta Decl. at ¶ 9). Those responses contained only incomplete and evasive answers, and stated Galaxy Wholesale did not have any records, in any form, showing profits or revenues from sales of RAW® products (counterfeit or genuine). *See id.* ¶ 62 (Danta Decl. at ¶ 9).  After a status conference, the Court extended the discovery deadline to February 20, 2018, to give Galaxy Wholesale even more time to produce this information. *See id.* ¶ 63 (Danta Decl. at ¶¶ 11-12). Galaxy Wholesale's counsel promised that Galaxy Wholesale would produce all missing documents and information, but again, nothing was produced by the deadline. *See id.* ¶ 64 (Danta Decl. at ¶ 12).

On February 23, 2018, Galaxy served equally deficient Amended Responses and Objections, which did not cure any of the deficiencies HBI identified. *See id.* ¶ 65 (Danta Decl. at ¶ 13, Exhibit D thereto).

On March 20, 2018, HBI filed a letter application with the Court to compel Galaxy Wholesale to produce the same basic information it had been requesting since the beginning of

the lawsuit, five months earlier. *See id.* ¶ 66 (Danta Decl. at ¶ 14, Exhibit E thereto). In response to the application to compel, Galaxy asserted, *inter alia*, that "Defendant will not hand over sales records because they are not relevant." *See id.* ¶ 67 (Danta Decl. at ¶ 15, Exhibit F thereto). The Court ordered Galaxy to produce all sales records, along with all other responsive documents in its possession, custody or control concerning #2-6 of HBI's document requests, and #2 and #3 of HBI's interrogatories by April 24, 2018. *See id.* ¶ 68 (Danta Decl. at ¶ 16, Exhibit G thereto). In response to the Court Order, Galaxy produced <u>some</u> handwritten invoices with incomplete customer information and unexplained gaps, specifically, from January to early March 2017, the very time period that HBI made its controlled buys described in the Amended Complaint, and the most relevant time period for this lawsuit. *See id.* ¶ 69 (Danta Decl. at ¶ 17, Exhibit I). Thus, the most relevant records were missing.

HBI sought relief, including a request to depose Galaxy Wholesale after the close of discovery to fill in the information gaps. *See id.* ¶ 70 (Danta Decl. at ¶¶ 19-20, Exhibit J thereto). After Galaxy ignored a Court Order that "[t]he parties shall submit a joint letter to the Court . . . updating the Court on the parties' compliance," the Court issued another Order to Show Cause why HBI should not depose Galaxy Wholesale, at Galaxy Wholesale's cost. *Id.* ¶ 71 (Danta Decl. at ¶ 21, Exhibit K thereto).

Ultimately, the Court ordered Galaxy Wholesale's deposition as a sanction "for its failure to comply with th[e] Court's prior discovery order" and "reserve[d] decision on whether Galaxy should bear some or all of the costs of the deposition." *Id.* ¶ 73 (Danta Decl. at ¶ 23, Exhibit M thereto). Thus, HBI served Galaxy Wholesale with a deposition notice under F.R.C.P. 30(b)(6), setting the deposition for June 6, 2018. *See id.* ¶ 74 (Danta Decl. at ¶¶ 24-25, Exhibit N thereto). Said Khamis Ghnaim ("Ghnaim") appeared as the Rule 30(b)(6) witness. *See id.* ¶ 74 (Danta

Decl. at ¶¶ 24-25, Exhibit N thereto). However, Ghnaim still could not answer basic questions about the company, its operations, and purchases and sales of RAW® products.

For example, Ghnaim claimed not to know when Galaxy was founded, or who founded it. *See id.* ¶ 75 (citing Dep. at pg. 9:7-11). The morning of the deposition was the first and only time Ghnaim (1) spoke with anyone about the deposition, and (2) learned of any of the deposition topics. *See id.* ¶¶ 76-78 (citing Dep. at pg. 16:3-17, 16:22—17:3). He asked, "What does that mean?" when HBI asked if Galaxy Wholesale received a written litigation hold notice for this lawsuit. *See id.* (quoting Dep. at 299:6-11). Ghnaim also testified he could not calculate purchases or sales, profits or revenues, of RAW® products, because of "insufficient recordkeeping." *Id.* ¶¶ 81 & 82 (citing Dep. at pg. 217:9—220:6).

Ghnaim additionally could not recall if Galaxy had ever sued or been sued before this lawsuit, or if any of Galaxy's shipments had ever been seized by US Customs or border control, because he did not check when responding to HBI's discovery requests. *See id.* ¶ 79 (Dep. at 208:6-8, 208:16-18).  He also continued buying RAW® products from unauthorized sources, at unauthorized, cheap prices, even after Galaxy Wholesale was sued and stipulated to the preliminary injunction. *See id.* ¶ 80 (citing Dep. at pg. 212:21—214:14, Dep. Exhibit 5 at pg. 38). To date, HBI still does not know Galaxy Wholesale's revenues related to its sales of RAW® products (counterfeit or genuine, for any paper variety); profits related to RAW® products (same); or revenue or profits generally for Galaxy Wholesale. *Id.* ¶¶ 81 & 82 (citing Dep. at pg. 217:9—220:6). This information is not available to HBI through any records, including tax returns, as Galaxy could not, and has not, answered whether it filed any federal or state tax returns. *Id.* ¶ 88 (Danta Decl. at ¶ 33).  He also testified he is incapable of providing any

accounting of the sale of RAW® products whatsoever, because of the way it keeps records. *See id.* ¶ 83 (citing Dep. at pg. 231:8—232:3).

Because Ghnaim could not answer many basic questions (again including "Who owns Galaxy Wholesale?"), counsel stipulated that HBI could serve Galaxy Wholesale with a list of unanswered questions from the transcript, and Galaxy Wholesale would research and serve sworn, verified answers to the questions within 24 days of service. *See id.* ¶ 84 (citing Dep. at pg. 334:3-20). HBI served the list of questions on June 25, 2018. *See id.* ¶ 85 (Danta Decl. at ¶ 29, Exhibit P thereto). Therefore, Galaxy Wholesale's response should have been served July 19, 2018. Instead, Galaxy Wholesale again missed its deadline, and again did not ask for or obtain an extension. *See id.* ¶ 86 (Danta Decl. at ¶¶ 30 & 31). On August 8, 2017 – weeks after the stipulated deadline – Galaxy served another set of inadequate responses. *See id.* ¶ 87 (Danta Decl. at ¶ 32, Exhibit Q thereto).  It ignored some questions entirely; purported it "did not know" or was "not aware" of the answers to other questions; and purported it would provide some answers "on a later date," never specified. *Id.* (Danta Decl. at ¶ 32, Exhibit Q thereto). Galaxy still has not supplemented any answers. *See id.* ¶ 88 (Danta Decl. at ¶ 33).

As this timeline demonstrates, Galaxy Wholesale withheld/prevented HBI from learning basic information about clearly relevant matters, including the answers to key questions needed to determine damages. The constructive failure to participate in discovery and defend itself reinforces willful counterfeiting.  If Galaxy Wholesale was an "innocent" small player that did not intentionally buy and re-sell counterfeit RAW® products, why would they thwart discovery, or structure operations to create inadequate records? The probable answer is: they blocked discovery and intentionally kept poor records to cover up their counterfeiting activities.

## **LEGAL STANDARD**

Summary judgment should be granted "if the pleading, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Chloe v. Queen Bee of Beverly Hills, LLC*, No. 06-cv-3140, 2011 WL 3678802, at *1 (S.D.N.Y. Aug. 19, 2011) (granting plaintiff summary judgment on trademark counterfeiting claims); *Coach, Inc. v. Allen*, No. 11-cv-03590, 2012 WL 2952890, at *1 (S.D.N.Y. July 19, 2012) (same). An issue of material fact is "genuine" only if "the evidence is such that a reasonable [fact finder] could not return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Chloe*, 2011 WL 3678802, at *3. The opposing party "'may not rely on conclusory allegations or unsubstantiated speculation.'" *See Burberry Ltd. v. Euro Moda, Inc.*, No. 08-cv-5781, 2009 WL 1675080, at *3 (S.D.N.Y. June 10, 2009) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)). Additionally, "only admissible evidence need be considered . . . in ruling on a motion for summary judgment." *Ontel Prods. Corp. v. Airbrushpainting Makeup Store*, 2017 WL 1969681, at *1 (S.D.N.Y. May 12, 2017) (quoting *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013)) (internal quotations omitted).

## **ARGUMENT**

### I.    **There Is No Dispute Of Material Fact That Galaxy Wholesale's Purchases/Sales Of Counterfeit RAW® KSS And RAW® Rolling Trays Violated The Lanham Act**

The facts are undisputed that Galaxy Wholesale bought and sold counterfeit versions of HBI's RAW® KSS and rolling trays – and thus, this Court should grant HBI's Motion for Summary Judgment against Galaxy Wholesale for all Lanham Act claims.

To succeed on the Lanham Act claims for trademark infringement and counterfeiting (15 U.S.C. § 1114), and common-law trademark and trade dress infringement, unfair competition, and false designation of origin (15 U.S.C. § 1125(a)), HBI must show that (1) it owns valid marks that are entitled to protection under the Lanham Act, and (2) Galaxy Wholesale used confusingly similar marks, including counterfeit versions or spurious imitations of the marks. *See Ontel Prods. Corp.*, 2017 WL 1969681, at *1 (quoting *1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 407 (2d Cir. 2005)); *see also Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp. 2d 448, 454 (S.D.N.Y. 2005) (claim for unfair competition and false designation of origin under the Lanham Act requires identical test to that of infringement).  There can be no doubt, or genuine dispute of material fact, that HBI establishes all the above requirements.

### a.  The RAW® Trademarks And RAW® Trade Dresses Are Valid And Entitled To Protection

HBI supports the Motion for Summary Judgment with sufficient evidence demonstrating that it exclusively owns the valid and protectable RAW® Trademarks and RAW® Trade Dresses, and Galaxy cannot point to any evidence to the contrary.

A summary judgment movant can show its trademarks are entitled to protection under the Lanham Act by demonstrating that the trademark(s) at issue are actively registered with the U.S. Patent and Trademark Office ("USPTO"), that it is the registrant, and that it has the exclusive right to use the mark in commerce. *See Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999) (citing 15 U.S.C. § 1115(a)). Here, HBI shows through uncontroverted evidence that it owns, has registered, and has continuously, exclusively used the RAW® Trademarks and Registered RAW® Trade Dresses since registration and the respective first-use dates. The registration certificates are *prima facie* evidence of this first element of the Lanham Act claims, and they show the marks are active, valid, and currently registered to HBI.

14

Thus, there is no genuine issue of material fact that the first element of the Lanham Act claims is satisfied for the registered source identifiers.

Additionally, the common-law RAW® KSS Trade Dress is distinctive, exclusively used, and entitled to protection, because HBI provided undisputed and uncontroverted evidence that the trade dress is distinctive and source identifying (through inherent distinctiveness and the acquisition of secondary meaning), and also non-functional. *See* discussion *supra*, pg. 2-3 (describing common-law trade dress, HBI's marketing and promotional efforts, and consumer brand recognition of the trade dress); *see also Philip Morris USA Inc. v. Cowboy Cigarette Inc.*, No. 03-cv-02292, 2003 WL 22852243, at *1 (S.D.N.Y. Dec. 2, 2003). As detailed above, the common-law RAW® KSS Trade Dress has a highly distinctive look-and-feel, and has been used exclusively by HBI in connection with authentic RAW® products, including rolling papers and rolling trays, and is well-known to consumers. It contains multiple distinctive design elements, including the RAW® Trademarks, that are unique to RAW® products and HBI, such that it has strong secondary meaning among HBI's consumers. Galaxy Wholesale has never contradicted these claims through evidence, and cannot do so. Accordingly, there is no genuine issue of material fact that the RAW® KSS Trade Dress is valid and entitled to protection.

> **b.  Galaxy Wholesale Used The RAW® Trademarks And RAW® Trade Dresses In Commerce, In Connection With The Sale Of Counterfeit Goods, Without HBI's Consent**

In buying and re-selling counterfeit RAW® products not authorized by HBI, Galaxy Wholesale used the RAW® Trademarks and Trade Dresses in commerce without HBI's consent.

A mark is used in commerce when "it is placed in any manner on the goods or their containers . . . and . . . the goods are sold or transported in commerce." *See Spin Master Ltd. v. Alan Yuan's Store*, No. 17-cv-7422, 2018 WL 3212460, at *5 (S.D.N.Y. June 29, 2018) (quoting

15 U.S.C. § 1127).  Selling counterfeit goods in the United States constitutes "use in commerce." *See*, *e.g.*, *Cartier Int'l. B.A. v. Ben-Menachem*, No. 06-cv-3917, 2008 WL 64005, at *11 (S.D.N.Y. Jan. 3, 2008) (granting summary judgment finding defendant unlawfully used plaintiff's trademarks in commerce when they sold counterfeit versions of plaintiff's goods). "The sale of counterfeit goods is sufficient use to establish liability." *Spin Master Ltd.*, 2018 WL 3212460, at *5 (citing *El Greco Leather Prods. Co. v. Shoe World, Inc.*, 806 F.2d 392, 396 (2d Cir. 1986)).

Here, Galaxy Wholesale sold unknown quantities of counterfeit RAW® products, depicting counterfeit versions of the RAW® Trademarks and Trade Dresses, including but definitely not limited to the products HBI's agents purchased during controlled buys. By selling counterfeit products bearing counterfeit marks to customers, Galaxy made commercial use of HBI's marks without its consent. That use in connection with counterfeit products was definitely unauthorized, as HBI did not, and would never, consent to anyone selling counterfeit goods. Thus, there is no genuine issue of material fact that Galaxy Wholesale used counterfeit RAW® Trademarks and Trade Dresses in commerce, without HBI's permission, and the second element of HBI's Lanham Act claims is satisfied.

### c.  Galaxy's Sale Of Counterfeit RAW® Products Is Likely To Cause Confusion

The very purpose of counterfeit goods is to create consumer confusion. Thus, there can be no doubt that Galaxy Wholesale's purchases and sales of counterfeit RAW® rolling papers and trays is intended and likely to cause confusion.

To demonstrate a likelihood of confusion, Second Circuit courts apply the eight-factor *Polaroid* test, except when counterfeit marks are involved, as they are inherently confusing. *See Fendi Adele S.R.L. v. Filene's Basement, Inc.*, 96 F. Supp. 2d 368, 383 (S.D.N.Y. 2010); *see*

16

*River Light V., L.P. v. Lin & J Intern., Inc.*, No. 13-cv-3669, 2014 WL 6850966, at *17 (S.D.N.Y. Dec. 4, 2014); *see also Burberry Ltd.*, 2009 WL 1675080, at *5 (stating "to find a likelihood of confusion, a court need only determine that the items at issue are counterfeit"); *Cartier Int'l B.V.*, 2008 WL 64005, at *11 (stating examination of *Polaroid* factors is unnecessary in case involving counterfeit mark). Courts generally do not require the full *Polaroid* analysis in counterfeiting cases, because the whole point of counterfeiting is to cause confusion. *See Burberry Ltd.*, 2009 WL 1675080, at *5 (citing *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003)).

Here, there is no doubt that Galaxy Wholesale used spurious, counterfeit versions of the RAW® Trademarks and Trade Dresses on counterfeit rolling papers and trays, precisely for the purpose of confusing consumers and replacing authorized sales of authentic products. A counterfeit mark is "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.  The purported RAW® products Galaxy bought and sold contained identical, near-identical, and substantially indistinguishable reproductions of HBI's RAW® Trademarks and RAW® Trade Dresses, including copying the overall look-and-feel of authentic packaging. Thus, there can be no genuine issue of material fact that Galaxy's transactions in counterfeit RAW® KSS and rolling trays caused confusion (and also were likely to cause confusion). *Accord Burberry Ltd.*, 2009 WL 1675080, at *7 (granting summary judgment for plaintiff on section 32 trademark counterfeiting claim).[2]

---

[2] If the Court conducts a full *Polaroid* analysis, HBI respectfully submits that it will find a likelihood of confusion considering all relevant factors: "[1] the strength of the prior owner's mark, [2] the degree of similarity between the two marks, [3] the proximity of the products, [4] the likelihood that the senior user will 'bridge the gap' between the two products, [5] actual confusion, [6] the junior user's intent, [7] the quality of defendant's products and [8] the sophistication of the buyers." *See Consolidated Cigar Corp. v. Monte Cristi de Tabacos*, 58 F. Supp. 2d 188, 197 (S.D.N.Y. 1999) (citing *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d

### d.  False Designation of Origin and Unfair Competition

Galaxy also is liable under the Lanham Act for unfair competition and false designation

of origin. *See Jamelis Grocery, Inc.*, 378 F. Supp. 2d at 454 (stating the requirements for a claim

for unfair competition and false designation of origin under the Lanham Act require the identical

test to that of trademark infringement).  As demonstrated above, HBI's RAW® Trademarks and

RAW® Trade Dresses are valid and entitled to protection, and the counterfeit products sold by

Galaxy are likely to be confused with HBI's authentic products that state they are distributed by

HBI/"Made in Alcoy, Spain." There is zero evidence of record supporting the statement that

Galaxy Wholesale's counterfeit products are made in Alcoy, Spain, as the product packaging

states.  In all likelihood, the counterfeit products are made in China. Thus, the Court should also

grant summary judgment against Galaxy Wholesale for HBI's other claims under Section

1125(a).

## II.   By Selling Counterfeit RAW® Products To New York Consumers, Galaxy Is Liable For Violating New York General Business Law § 349

There is no genuine dispute of material fact that Galaxy Wholesale is liable under N.Y.

Gen. Bus. Law § 349, because of the sale of counterfeit RAW® products.

To establish a claim under Section 349, HBI needs to demonstrate that "(1) [Galaxy

Wholesale's] deceptive acts were directed at consumers, (2) the acts are misleading in a material

---

492, 495 (2d Cir. 1961)). As argued above, the RAW® Trademarks and Trade Dresses are strong and distinctive, and authentic and counterfeit products are identical in many respects except that they contain material quality differences that appear to be attributable to HBI. The goods are the same, they are intentionally confusing, and they have caused confusion among HBI's customers. These customers are mostly unsophisticated, even though they may be loyal to HBI, because they are unlikely to fully inspect the products at the point of sale, or to return the products after using them. Galaxy Wholesale and other counterfeiters count on this lack of sophistication and use it to sell more counterfeit products.

way, and (3) [HBI] has been injured as a result." *See Gucci Am., Inc.*, 277 F. Supp. 2d at 272. Here, HBI establishes all three requirements.

First, by selling counterfeit RAW® products, Galaxy deceived consumers into believing that the products sold were authentic RAW® products, when they are not. "Deceptive acts" are defined as acts that are 'likely to mislead a reasonable consumer acting reasonably under the circumstances." *See Krasnyi Oktyabr, Inc. v. Trilini Imps.*, No. 05-cv-5359, 2007 WL 1017620, at *11 (E.D.N.Y. Mar. 30, 2007) (quoting *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)).  Here, it would be reasonable for a consumer to believe that Galaxy Wholesale sells authentic RAW® products, because the counterfeit products display the RAW® Trademarks and Trade Dresses, state they are distributed by HBI and made in Alcoy, Spain, and are sold at a storefront that sells multiple other brands of rolling papers and smoking accessories (a typical outlet, in other words). "By selling infringing products to [customers] located in New York, [Galaxy] placed into the stream of commerce goods likely to confuse consumers as to their true source of origin." *See Burberry Ltd.*, 2009 WL 1675080 (granting summary judgment for Plaintiff on its section 349 claims).  Deceptive conduct is consumer oriented when the "acts complaint of 'potentially affect similarly situated consumers." *See Koch v. Greenberg*, No. 07-cv-9600, 2008 WL 4778813, at * 7 (S.D.N.Y. Oct. 31, 2008) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 27 (1995)). Here, untold consumers purchased counterfeit RAW® products from Galaxy Wholesale. RAW® rolling paper is Galaxy's best-selling brand of rolling paper products, and it bought more product than HBI's agents bought during controlled buys, and presumably sold it because it did not turn any of that product over to HBI. Indisputably, these sales were consumer directed.

19

Second, Galaxy Wholesale's actions harmed consumers because the counterfeit products falsely state they are "organic" and "natural," and composed of pure natural fibers, when they are not known to be and are not subject to any of HBI's quality control standards. When products are not subjected to known quality controls, consumer injury or harm is presumed. *See, e.g.*, *Krasnyi Oktyabr, Inc.*, 2007 WL 1017620, at *11; *Johnson & Johnson v. Azam Int'l Trading*, 07-cv-4302, 2013 WL 4048295, at *11 (E.D.N.Y. Aug. 9, 2013) (holding Section 349 claim was properly alleged when counterfeit glucose test strips were distributed); *Koch*, 2008 WL 4778813, at *7 (holding Section 349 claim was properly alleged when defendant sold counterfeit wine).

Galaxy Wholesale's deceptive acts are also materially misleading, because consumers expect HBI's RAW® products to have certain features and be subject to HBI's quality control standards. One of the reasons HBI's RAW®-brand products are sought out by consumers is the fact that they contain organic and natural ingredients, while many other brands of rolling papers do not. Galaxy's acts are materially misleading because Galaxy does not know if the counterfeit RAW® products are in fact natural and organic, and especially because it never asked its sources where the counterfeit RAW® products came from, if they in fact originated with HBI, or if they complied with express statements on the counterfeit packaging.

Lastly, HBI is harmed because it loses goodwill each time counterfeiters sell a counterfeit good and consumers falsely attribute product defects to HBI. Consumers are harmed, too, because they lose the right to receive the products they intend to buy and ingest, and purchase inferior counterfeit products instead of HBI's high quality products.

## III.   Galaxy Is Liable For Unfair Competition Under New York Common Law

There is no genuine issue of material fact that Galaxy is liable for unfair competition under New York common law, as its sale of counterfeit RAW® products was likely to cause confusion and did cause consumer confusion, and involved bad faith.

To establish a claim under New York common law for unfair competition, HBI must show actual or likelihood of confusion, and "bad faith" on the part of Galaxy Wholesale.  *See Burberry Ltd.*, 2009 WL 1675080, at *15 (quoting *Girl Scouts of U.S.A. v. Bantam Doubleday Dell Publ'g Grp., Inc.*, 808 F. Supp. 1112, 1131 (S.D.N.Y. 1992)).  For the reasons demonstrated above, Galaxy Wholesale's purchase and sale of counterfeit RAW® products is likely to cause confusion and did cause confusion.  Thus, HBI meets requirement one.

To satisfy the second requirement, HBI merely needs to demonstrate that Galaxy Wholesale used a counterfeit mark – which it has. "[A] presumption of bad faith attaches to the use of a counterfeit mark." *See Burberry Ltd.*, 2009 WL 1675080, at *15 (quoting *Philip Morris USA Inc. v. Felizardo*, No. 03-cv-5891, 2004 WL 1375277, at *6 (S.D.N.Y. June 18, 2004)) (internal quotations omitted); *Cartier Int'l B.V.*, 2008 WL 64005, at *13 (granting summary judgment on plaintiff's common law New York unfair competition claim and applying presumption of bad faith when defendants' sold counterfeit products).  Thus, bad faith is demonstrated, and the Court should grant summary judgment against Galaxy Wholesale on HBI's common-law claims. *Accord Burberry Ltd.*, 2009 WL 1675080, at *15 (granting summary judgment for plaintiff on New York unfair competition claim where defendant used counterfeit mark).

## IV.    Galaxy Wholesale Acted Willfully

To obtain summary judgment on willfulness, HBI needs to demonstrate there is no genuine issue of material fact "(1) that the defendant was actually aware of the infringing

activity, or (2) that the defendant's actions were the result of reckless disregarding or willful blindness." *See Fendi Adele, S.R.L., v. Ashley Reed Trading, Inc.*, 507 Fed. App'x 26 (2d Cir. 2013) (quoting *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005)) (finding willful trademark infringement at the summary judgment stage). A defendant is willfully blind when it "knew it might be selling infringing goods but nevertheless 'intentionally shielded itself from discovering' the truth." *Ashley Reed Trading, Inc.*, 507 Fed. App'x at 31 (quoting *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 109 (2d Cir. 2010)). Galaxy may try to argue there is a dispute of material fact concerning willfulness, and summary judgment should be denied, by denying its operator Ghnaim knew he was purchasing and re-selling counterfeits. But the Court need not consider unsupported, self-serving statements like these, unless they are supported by evidence. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *see also Burberry Ltd.*, 2009 WL 1675080, at *3 (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)).

Clearly, based on the factual record, Galaxy Wholesale willfully bought and sold counterfeit RAW® products, ignoring glaring red flags that confirmed counterfeiting. For example, Galaxy Wholesale bought the counterfeit goods at prices far too low to be authentic products, when Galaxy Wholesale had a direct customer relationship with HBI, without ever asking the other sources about authenticity or how they could offer such lower prices than the manufacturer and original U.S. distributor. Galaxy Wholesale at the very least was willfully blind because its Ghnaim, who was in charge of purchasing RAW® products has experience with HBI and in the rolling paper industry. Galaxy Wholesale bought and sold multiple brands of

rolling papers and trays, and also bought authentic RAW® products directly from HBI when it simultaneously sought out cheaper products from the unauthorized sources. Galaxy Wholesale never purchased RAW® KSS from HBI at prices less than $38.70 per box, but still bought RAW® KSS from at least one unauthorized source for $22.00 per box, an almost 45% discount. As indicated above, a purchase price of $22.00 per box is too low to possibly be authentic. Where a price for a product is "suspiciously low" courts have held that it can provide a basis for "constructive knowledge that merchandise was counterfeit." *See Microsoft Corp. v. Software Wholesale Club*, Inc., 129 F. Supp. 2d 995, 1008 (S.D. Tex. 2000) (citing *Screen Gems-Columbia Music, Inc. v. Mark-Fi Records, Inc.*, 256 F. Supp. 399, 404 (S.D.N.Y. 1966)). Here, the price should have alerted Galaxy Wholesale to the counterfeit nature of the RAW® products it bought and re-sold. Most likely the price did alert Galaxy Wholesale, because its wholesale business depends on buying products low and re-selling high to earn a profit.

Furthermore, while the purchase price was suspiciously low, Galaxy never asked its sources about their sources of the cheap RAW® products. When a defendant fails to inquire about the source of counterfeit goods, courts have not hesitated to find willful blindness, which is equivalent to willfulness. *See, e.g.*, *Ashley Reed Trading, Inc.*, 507 Fed. App'x at 31; *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 854 (2d Cir. 1995) (affirming finding that defendant acted willfully in infringing the plaintiff's rolling paper trademark when defendant's testimony was "bristled with assertions of memory lapses," the defendant "took no steps to verify the authenticity of the [product] before purchasing it, never asked if the company from which he acquired the [product] was authorized to distribute it, and never asked where the company got the [product]"). Here, as in the *Bambu* case, Galaxy Wholesale repeatedly bought suspiciously cheap RAW® rolling papers and rolling trays, and never once inquired about the

23

source the RAW® products, and never asked about their authenticity.  These are telltale signs of

willful blindness, if not subjectively willful counterfeiting. *See, e.g.*, *Ashley Reed Trading, Inc.*;

*Bambu Sales, Inc.*, 58 F.3d at 854.

Galaxy Wholesale also continued buying the cheaper, counterfeit RAW® products from

the same unauthorized source after being notified of HBI's claims and stipulating to the

preliminary injunction. When a defendant was "on notice that it might be infringing trademarks,"

the Second Circuit has found willful infringement. *See Ashley Reed Trading, Inc.*, 507 Fed.

App'x at 31 (granting summary judgment regarding willfulness when defendant previously

received cease and desist letters, and was previously sued). Here, the fact that it was sued for

counterfeiting should have put Galaxy Wholesale on notice that its source sold counterfeit

products, and Galaxy Wholesale should have stopped buying from that source. It did not and

instead continued buying cheaper products from the unauthorized source anyway.

In sum, Galaxy has no credible argument that its counterfeiting was "innocent," *i.e.*,

without knowledge or non-willful. It blatantly ignored numerous red flags, and then it also did

not make or keep its own receipts. Where defendants failed to maintain relevant transaction

records and key financial documents, actions were deemed willful. *See Ashley Reed Trading,*

*Inc.*, 507 Fed. App'x at 31 (granting summary judgment where defendant did not keep financial

documents or maintain records of transactions with suppliers). Galaxy Wholesale repeatedly

testified it did not have transactional records, blaming its own "inadequate recordkeeping." Its

litigation behavior reinforces willful counterfeiting. Throughout discovery, Galaxy Wholesale

avoided providing basic information and documentation, which non-willful counterfeiters would

be able to provide – namely, how much product it bought and re-sold, and how much money it

earned in terms of profits and revenues. Here, HBI has still not received answers to these

questions and others. A natural inference is that HBI did not receive this information, because Galaxy Wholesale did not want to produce it, because Galaxy Wholesale did not want to admit the extent of its actual, willful counterfeiting.

### V.   HBI Is Entitled To Statutory Damages Under 15 U.S.C. § 1117(c)

"Under the Lanham Act, a trademark owner may elect to recover, at any time before final judgment is rendered, an award for statutory damages for any use of a counterfeit mark in connection the sale, offering for sale, or distribution of goods or services." *Coach, Inc.*, 2012 WL 2952890, at *8.  Here, Galaxy committed counterfeiting by selling products bearing counterfeit versions of the RAW® Trademarks and RAW® Trade Dresses, and has repeatedly alleged it does not know how many counterfeit products it bought and re-sold. As a result, HBI cannot begin to calculate actual damages, and statutory damages are the appropriate remedy.

### CONCLUSION

For the reasons discussed above, HBI requests summary judgment be granted in its favor on all claims, and that Galaxy's actions be deemed willful.

Respectfully submitted,

Date: September 14, 2018                VENABLE LLP

/s/ Marcella Ballard
Marcella Ballard
Victoria R. Danta
Maria R. Sinatra
1270 Avenue of the Americas, 24th Floor
New York, NY 10020
Phone: 212-370-6248 | Fax: 212-307-5598
MBallard@Venable.com, VRDanta@Venable.com,
MRSinatra@Venable.com