UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BBK TOBACCO & FOODS, LLP, | |
| Plaintiff, | 17-CV-4079 (BCM) |
| -against- | **OPINION AND ORDER** |
| GALAXY VI CORP., | |
| Defendant. | |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__5/31/2020

**BARBARA MOSES, United States Magistrate Judge.**

Before me in this trademark infringement action is a motion by plaintiff BBK Tobacco & Foods, LLP d/b/a HBI International (HBI) for summary judgment as to the damages owed to it by defendant Galaxy VI Corp. d/b/a Galaxy Wholesale (Galaxy). This Court previously concluded, in ruling on HBI's motion for summary judgment as to liability, that Galaxy infringed HBI's trademarks, in violation of the Lanham Act, when it sold one pack of counterfeit RAW brand King Size Slim rolling papers (for $2.00) and one counterfeit RAW brand rolling tray (for $10.00) to an investigator hired by HBI. *BBK Tobacco & Foods, LLP v. Galaxy VI Corp.*, 408 F. Supp. 3d 508, 518, 530 (S.D.N.Y. 2019) (hereafter *HBI I*). Based on the Court's finding of liability, HBI now seeks: (1) statutory damages of $600,000; (2) an order deeming this case "exceptional," so that HBI can apply for an award of attorneys' fees; and (3) an order permanently enjoining Galaxy and those acting in concert with it from future infringing conduct.

For the reasons that follow, plaintiff's motion will be GRANTED IN PART. The Court will award HBI statutory damages of $30,000 and enter a permanent injunction prohibiting Galaxy, and those acting in concert with it, from future infringing conduct. However, the Court does not find this case to be exceptional and consequently will not award attorneys' fees.

## I.    BACKGROUND

Plaintiff HBI designs, manufactures, imports, markets and sells RAW brand "smoking products and accessories," including rolling papers. Amend. Compl. (Dkt. No. 27) ¶¶ 6, 23. According to HBI, its rolling papers are used by consumers who prefer to "roll their own" cigarettes, often because such consumers view pre-made cigarettes as "artificial, over-processed, or environmentally unfriendly." *Id*. ¶ 25. RAW brand rolling papers use "minimally processed, unbleached ingredients, which give the rolling papers their characteristic translucent brown color." *Id*. ¶ 30. RAW is also "a lifestyle brand centered around smoking, smoking culture, and the particular culture that consumers of RAW-brand smoking products enjoy." *Id*. ¶ 33. Defendant Galaxy is a New York corporation, Am. Compl. ¶ 13, which since January 2017 has operated a smoke supply store at 746 Myrtle Avenue in Brooklyn, managed by Said Ghnaim. *See* Ghnaim Dep. Tr. (Dkt. No. 137-16) at 11:23-12:22, 39:2-10, 40:25-41:9.[1]

### A.    Procedural History

HBI filed this action on May 31, 2017, alleging that eleven corporate and individual defendants sold counterfeit RAW rolling papers and related products at various newsstands, convenience stories, groceries, and other small businesses in New York City. Compl. (Dkt. No. 1) ¶¶ 5, 7-16. On June 22, 2017, HBI filed its Amended Complaint, stating claims for: (1) trademark infringement in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114; (2) false designation of

---

[1] It is not entirely clear who owns the defendant corporation. Ghnaim testified at deposition that he ran the business but that his father, Khamis Ghnaim, was the sole owner of the corporation. Ghnaim Dep. Tr. at 12:3-11, 65: 20-22. However, in affidavits submitted in opposition to plaintiff's summary judgment motion as to liability and the present motion, Said Ghnaim attested, "I am the 23-year-old individual who owns Galaxy VI Corp. . . . and who operates the day-to-day business at our store front location at 746 Myrtle Avenue." Ghnaim Aff. dated Sept. 28, 2018 (Ghnaim Liability Aff.) (Dkt. No. 140-1) ¶ 1; Ghnaim Aff. dated Nov. 19, 2019 (Ghnaim Damages Aff.) (Dkt. No. 152) ¶ 1.

origin in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (3) deceptive acts and practices in violation of New York General Business Law (GBL) § 349; and (4) common-law trademark infringement, unfair competition, and unjust enrichment. On August 11, 2017, the parties consented to proceed before a United States Magistrate Judge for all purposes pursuant to 28 U.S.C. § 636(c). (Dkt. No. 70.) On October 11, 2017, the Court approved a stipulated preliminary injunction prohibiting Galaxy from purchasing or selling counterfeit RAW products. (Dkt. No. 88.) Thereafter, all of the other defendants settled or defaulted (Dkt. Nos. 96-99, 108, 119-122), leaving Galaxy as the sole defendant.

On September 14, 2018, after discovery, HBI filed its motion for summary judgment as to liability against Galaxy, supported by, *inter alia*, the Declaration of Victoria Danta, one of HBI's attorneys (Danta Decl.) (Dkt. No. 137). In opposition to plaintiff's motion, Galaxy submitted, *inter alia*, the Ghnaim Liability Affidavit. On September 30, 2019, the Court issued its Opinion and Order (Dkt. No. 142), granting summary judgment with respect to liability under the Lanham Act, but denying summary judgment as to willfulness and as to liability under New York law. *HBI I*, 408 F. Supp. 3d at 524-30.

On October 7, 2019, HBI moved to voluntarily dismiss its claims under GBL § 349 and New York common law (Dkt. No. 143), and on October 8, 2019, the Court granted the motion, dismissing HBI's state law claims. (Dkt. No. 144.) On October 31, 2019, HBI filed its second motion for summary judgment (Dkt. No. 145), supported by a Memorandum of Law (Pl. Mem.) (Dkt. No. 146) and a Local Civil Rule 56.1 Statement of Undisputed Facts (Pl. 56.1 Stmt.) (Dkt. No. 147), which in turn references various previously-filed affidavits, declarations, and other

portions of the record in this action.[2] HBI has elected to pursue statutory damages under the Lanham Act, 15 U.S.C. § 1117(c), rather than establish its actual damages. Pl. Mem. at 11-13.

Galaxy failed to file any responding memorandum of law, in violation of Local Civil Rule 7.1, and likewise failed to file any response to plaintiff's Local Civil Rule 56.1 Statement. Instead, on November 23, 2019, Galaxy filed the Ghnaim Damages Affidavit, as well as a document entitled Declaration and Opposition of Elio Forcina, signed by its attorney.[3] On November 26, 2019, the Court struck the Forcina declaration pursuant to Fed. R. Civ. P. 12(f), and ordered defendant to refile the Ghnaim Damages Affidavit if Galaxy wished it to be considered in opposition to the pending motion.[4] On November 26, 2019, defendant re-filed the Ghnaim Damages Affidavit, which now constitutes the only document in the record designed to counter the pending motion.

---

[2] Subsection (a) of Local Civil Rule 56.1 requires a party moving for summary judgment to submit "a short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Subsection (b) requires the opposing party to file a statement "responding to each numbered paragraph in the statement of the moving party." Local Civil Rule 56.1(b). Subsection (c) states that the moving party's factual assertions will be "deemed to be admitted" for purposes of the summary judgment motion "unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." Subsection (d) requires that each factual statement, whether by the moving or the opposing party, "be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

[3] Both documents were originally filed as a single pdf at Dkt. No. 150.

[4] As explained in the Order Striking Forcina Declaration (Dkt. No. 151), the document signed by defendant's counsel was not made under penalty of perjury, nor on personal knowledge, and therefore had no evidentiary value. *Id*. at 2. Moreover, it contained no citations to record evidence, cases, or statutes, nor any other recognizable legal argument, and therefore could not serve as a memorandum of law. *Id*. Instead, it consisted largely of insults and invective, contrary to "the goals of civility and professionalism expected of members of the Bar of this Court." *Id*. at 3.

On November 27, 2019, HBI filed a reply memorandum (Pl. Reply Mem.) (Dkt. No. 153) in further support of its motion for summary judgment as to damages.

### B.     Facts

The relevant facts are taken from plaintiff's Local Civil Rule 56.1 Statement, the underlying evidentiary materials to which it cites, and the prior pleadings and proceedings in this matter. They are undisputed unless otherwise noted. Where the evidence is susceptible of more than one interpretation, the Court has, as required, "resolv[ed] all ambiguities and draw[n] all factual inferences in favor of the party against whom summary judgment is sought." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).[5]

### 1.     Plaintiff

HBI "designs, manufactures, imports, markets, and sells the 'RAW' brand of smoking products, including rolling papers and accessories like rolling trays." Pl. 56.1 Stmt. ¶ 1. HBI's "RAW" rolling papers come in several varieties, including RAW King Size Slim (KSS), which are

---

[5] As noted above, defendant failed to file any responsive statement "controverting" the facts asserted in plaintiff's Local Civil Rule 56.1 Statement, any legal brief, or any other document citing relevant portions of the evidentiary record. Thus, the material facts set forth in plaintiff's statement may be "deemed to be admitted," Local Civil Rule 56.1(c), and this Court could simply "disregard[]" what remains of defendant's summary judgment submission and enter judgment in plaintiff's favor without further ado. *Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp. 2d 448, 453 (S.D.N.Y. 2004). Because "district courts have broad discretion regarding whether and how to penalize a party's failure to comply with local court rules," *id.* (collecting cases), and because this Court "endeavors to avoid penalizing parties harshly for the procedural errors of their attorneys," *id.*, we will consider the Ghnaim Damages Affidavit, at least to the extent that it complies with Fed. R. Civ. P. 56(c)(4), *see id.*; *HBI I*, 408 F. Supp. 3d at 515 n.3, and we will review the record to satisfy ourselves that plaintiff's factual assertions are supported by admissible evidence. However, "we are left with no choice but to treat as admitted all statements of fact contained in [plaintiff's] Rule 56.1 Statement that are supported and verified by admissible evidence contained in the record." *Jamelis Grocery*, 378 F. Supp. 2d at 545; *HBI I*, 408 F. Supp.3d at 515 n.3.

sold wholesale in 50-pack boxes with 32 paper "leaves" per pack, and cost approximately $38.70 to $40.50 per box. *Id*. ¶¶ 2-3. RAW KSS rolling papers "are subject to strict quality control standards" before they are distributed to wholesale stores and retailers. *Id*. ¶ 4. HBI also sells accessories, including rolling trays, which "share design elements with RAW rolling paper packaging" and have a "distinctive look and feel" that "makes the connection to RAW and [HBI] clear to consumers." *Id*. ¶ 6. RAW-brand products enjoy "strong consumer brand recognition," in part due to "strong sales and a strong social media presence." *Id*. ¶ 7.

HBI owns the "exclusive rights to a family of registered and common-law RAW® trademarks and trade dresses, which cover a variety of goods and services, including RAW® rolling papers and rolling trays," and have been used continuously and exclusively for this purpose since their first use dates. Pl. 56.1 Stmt. ¶¶ 18, 21; Declaration of Ian Kobe (Kobe Decl.) (Dkt. No. 12), Ex. A.[6]

### 2.    Defendant

Galaxy sells a variety of RAW products from its Brooklyn storefront. Pl. 56.1 Stmt. ¶¶ 25, 27, 28, 29, 32, 33. Although it also sells other brands of rolling papers, RAW rolling papers are the most popular. *Id*. ¶ 28; Ghnaim Dep. Tr. at 49:6-12. Galaxy sells a variety of RAW rolling papers, including RAW KSS. Pl. 56.1 Stmt. ¶ 29; Ghnaim Dep. Tr. at 51:8-15. It also sells RAW rolling machines, RAW filter tips, RAW cases, and RAW rolling trays. Pl. 56.1 Stmt. ¶ 32; Ghnaim Dep. Tr. at 51:20-25.

Prior to opening Galaxy's storefront in January 2017, Said Ghnaim worked as a "jobber," or middleman, selling, among other things, RAW products. Pl. 56.1 Stmt. ¶ 48; Ghnaim Dep. Tr.

---

[6] HBI's trademark registrations are discussed in more detail in § III(A)(2) below.

at 131:11-25. In September 2016, in anticipation of opening the store, Ghnaim made a "preparatory purchase" from nonparty My Import Warehouse (My Import), which included two cases (60 boxes) of what purported to be RAW KSS rolling papers, at a price of $28.50 per box. Pl. 56.1 Stmt. ¶¶ 38, 39, 40; Ghnaim Dep. Tr. at 141:19-143:18 & Ex. 4. In February 2017, shortly after Galaxy's store opened, Ghnaim contacted an HBI sales representative and began purchasing RAW products directly from HBI. Pl. 56.1 Stmt. ¶¶ 35, 36, 37; Ghnaim Dep. Tr. at 56:19-57:15; Danta Decl. Ex. D, at ECF page 19. From May through December 2017, he also purchased RAW products, including RAW KSS rolling papers, from nonparty Metro General Enterprise (Metro General), Pl. 56.1 Stmt. ¶ 41; Ghnaim Dep. Tr. at 115:23-116:4, at prices as low as $22 per box. Pl. 56.1 Stmt. ¶ 47; Ghnaim Dep. Tr. at 279:15-21; Danta Decl. Ex. D (Dkt. No. 137-4), at ECF page 25.

Ghnaim never inquired whether his non-HBI sources purchased their RAW products directly from HBI. Pl. 56.1 Stmt. ¶ 44. However, he did check to "mak[e] sure that the product [he] receiv[ed] [came] in a marked case box from RAW," and he used "a bar code scanner app on [his] phone" to ensure that the box was a "legitimate product." Ghnaim Dep. Tr. at 120:15-121:5. Ghnaim stated that he generally looked for the lowest prices available. Pl. 56.1 Stmt. ¶ 43; Ghnaim Dep. Tr. at 120:3-6. In his current affidavit, Ghnaim admits that he purchased RAW-brand products from a source that turned out to be "an unauthorized distributor," but complains that HBI "never informed us, even after the lawsuit began of the authorized and unauthorized distributors of their product." Ghnaim Damages Aff. ¶ 9. Ghnaim attests that he believed the other suppliers' prices were low simply because they could purchase larger quantities from HBI than Galaxy could, and thus could take advantage of bulk pricing discounts offered by HBI. *Id*. ¶¶ 5, 9.

Galaxy did not keep complete records of its purchases and sales of RAW products. Pl. 56.1 Stmt. ¶¶ 50, 61-64. According to Ghnaim, he sometimes purchased products without receiving a corresponding invoice, and only kept a single hard copy of the invoices he did receive. *Id*. ¶¶ 59-60. Similarly, Ghnaim maintained Galaxy's sales records in hard copy inventory books, and did not keep electronic records or backups of purchase invoices or sales receipts. *Id*. ¶¶ 60-62. Although Galaxy documented its daily sales totals in an Excel spreadsheet, it did not break down the items sold by product, brand or variety. *Id*. ¶ 64.

### 3.    Counterfeit Sales

Sometime prior to March 2017, HBI hired a private security and investigation firm, LSS Consulting, Inc. (LSS), to "investigate the manufacture, importation, sale, and other distribution of counterfeit RAW-brand rolling papers, rolling trays, and accessory products in the United States," under the direction of lead investigator John Hood. *See* Declaration of John Hood (Hood Decl.) (Dkt. No. 11), ¶ 2. LSS sent out private investigators to make "controlled buys" of RAW-brand products, then sent these products to HBI headquarters in Phoenix, Arizona, for "inspection and analysis." *Id*. ¶ 3; Pl. 56.1 Stmt. ¶¶ 51-52.

On March 2, 2017, an LSS investigator purchased one package of purported RAW KSS rolling papers ($2.00 each) and one purported RAW rolling tray ($10.00 each) from Galaxy's Myrtle Avenue storefront, evidenced by a hand-written receipt. Pl. 56.1 Stmt. ¶ 51; Hood Decl. ¶ 14 & Ex. A. As this Court found in its prior opinion, the two products purchased by the investigator were counterfeit, infringing HBI's trademarks and rendering Galaxy liable to HBI under §§ 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a). *HBI I*, 408 F. Supp. 3d at 525-26.

8

### 4.    Willfulness

Galaxy continued to purchase RAW brand products from a supplier other than HBI after this lawsuit was filed, *see* Ghaim Damages Aff. ¶ 9, and even after Galaxy entered into the stipulated preliminary injunction. In discovery, Galaxy produced purchase invoices from Metro General dated October 17, November 29, and December 7, 2017, which included RAW products. Danta Decl. ¶ 13 & Ex. D (Dkt. No. 137-4), at ECF pages 39, 40, 43. However, there is no evidence that the products corresponding to these invoices were counterfeit. *See HBI I*, 408 F. Supp. 3d at 528 ("Metro General may or may not have been selling counterfeit RAW products. But there is no evidence before the Court that it sold such products to Galaxy, nor that Galaxy resold them."). Since plaintiff "established only one sale of counterfeit RAW products by Galaxy," which took place on March 2, 2017, *id*., and failed to establish that Galaxy "knew that it was selling counterfeit goods on March 2, 2017, or that it recklessly disregarded evidence of counterfeiting that was available to it on or before that date," *id*. at 529, the Court concluded that there was a "genuine issue for trial" as to whether Galaxy's infringement was willful (or the result of "willful blindness"), precluding a grant of summary judgment to HBI on that issue. *Id*. at 526-29.

No new evidence as to willfulness has been submitted in connection with the present motion.

## II.    LEGAL STANDARDS

### A.    Summary Judgment

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 128-29 (2d Cir. 1996). The party moving for summary judgment

bears the burden of showing the absence of any genuine dispute of material fact by citing to admissible evidence in the record. Fed. R. Civ. P. 56(a), (c); *Adickes v. S.H Kress & Co.*, 398 U.S. 144, 157 (1970).

If the moving party meets its initial burden, the burden then shifts to the non-moving party to establish a genuine dispute of fact. *Beard v. Banks,* 548 U.S. 521, 529 (2006); *Santos v. Murdock,* 243 F.3d 681, 683 (2d Cir. 2001). The non-moving party may not avoid summary judgment by "relying solely on conclusory allegations or denials that are unsupported by facts." *Garcia v. JonJon Deli Grocery Corp.*, 2015 WL 4940107, at *2 (S.D.N.Y. Aug. 11, 2015) (citing *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2002)). Instead, it "must set forth 'specific facts showing that there is a genuine issue for trial.'" *Id.* at *2 (quoting *Celotex*, 477 U.S. at 324).

When considering a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 87 (2d Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Thus, "the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought. The inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin*, 46 F.3d at 202 (citations omitted).

At the summary judgment stage, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "The trial court's responsibility is 'limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.'" *Cornigans v. Mark*

*Country Day Sch.*, 2006 WL 3950335, at *3 (E.D.N.Y. July 12, 2006) (quoting *B.F. Goodrich v. Betkoski*, 99 F.3d 505, 522 (2d Cir. 1996)), *report and recommendation modified on other grounds, J.C. v. Mark Country Day Sch.*, 2007 WL 201163 (E.D.N.Y. Jan. 23, 2007). In other words, the court need only "determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Shapiro v. Kronfeld*, 2004 WL 2698889, at *8 (S.D.N.Y. Nov. 24, 2004) (quoting *Anderson*, 477 U.S. at 251-52). "[S]ummary judgment is proper only when, with all permissible inferences and credibility questions resolved in favor of the party against whom judgment is sought, 'there can be but one reasonable conclusion as to the verdict.'" *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 546 (2d Cir. 2010) (quoting *Anderson*, 477 U.S. at 250). *See also Redd v. New York Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012) (quoting *In re Dana Corp.*, 574 F.3d 129, 151 (2d Cir. 2009)) ("[s]ummary judgment is inappropriate when the admissible materials in the record 'make it arguable' that the claim has merit").

"District courts may grant summary judgment as to damages for which there exist no disputed issues of material fact," *Hart v. Rick's Cabaret Intern., Inc.*, 60 F. Supp. 3d 447, 474 (S.D.N.Y. 2014) (citing *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 740 (2d Cir. 2010) (collecting cases)), and frequently do so where, as here, statutory damages are available. *See*, *e.g.*, *Jamelis Grocery*, 378 F. Supp. 2d at 458-59 (granting summary judgment and awarding a total of $12,500 in statutory damages under the Lanham Act where defendants sold 52 packs of counterfeit cigarettes, thereby infringing five of plaintiff's marks).

### B.    Statutory Damages under the Lanham Act

Under § 35(e) of the Lanham Act, 15 U.S.C. § 1117(c), a plaintiff in a case involving counterfeit marks "may elect, at any time before final judgment is rendered by the trial court, to

recover, instead of actual damages and profits . . . an award of statutory damages" in the amount of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c), (c)(1).[7] Plaintiffs asserting Lanham Act claims in the Southern District of New York are ordinarily awarded statutory damages "on a per trademark, per type of good counterfeited basis." *Coach, Inc. v. Zhen Zhen Weng*, 2014 WL 2604032, at *16 (S.D.N.Y. June 9, 2014) (collecting cases). However, "[t]he Lanham Act provides no further guidelines for assessing appropriate statutory damages; the sole limit is 'what the court considers just.'" *Bumble and Bumble, LLC v. Pro's Choice Beauty Care, Inc.*, 2016 WL 658310, at *3 (S.D.N.Y. Feb. 17, 2016) (quoting *Gucci Am. Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004) (quoting 15 U.S.C. § 1117(c)), *amended on other grounds by Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 328 F. Supp. 2d 439 (S.D.N.Y. 2004)).

"Because the Lanham Act does not provide guidelines for courts to use in determining statutory damages, courts in the Second Circuit have relied on the test applied to claims under the Copyright Act, 17 U.S.C. § 504, to assess damages." *7-Eleven, Inc. v. Z-Eleven Convenience Store Inc.*, 2018 WL 1521859, at *6 (S.D.N.Y. Jan. 17, 2018); *see also Louis Vuitton Malletier, S.A. v. LY USA*, 2008 WL 5637161, at *1 (S.D.N.Y. Oct. 3, 2008)) (collecting cases), *aff'd* 676 F. 3d 83 (2d Cir. 2012)); *Zhen Zhen Weng*, 2014 WL 2604032, at *17. That test, as articulated in *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, requires the court to consider "the expenses saved and the profits

---

[7] If the court concludes that the use of the counterfeit mark was willful, it may award up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2). As noted above, however, plaintiff failed to establish willfulness when it moved for summary judgment on liability, see *HBI I*, 408 F.3d at 429, and has not presented any new evidence of willfulness in connection with the present motion, which seeks statutory damages within the range for non-willful infringement.

reaped by the infringers," the "revenues lost by the plaintiff," the "value" of the infringed intellectual property, the "deterrent effect on others besides the defendant," whether the defendant's conduct was "innocent or willful," whether the defendant "cooperated in providing particular records from which to assess the value of the infringing material produced," and "the potential for discouraging the defendant." 807 F. 2d 1110, 1116-17 (2d Cir. 1986).

### C.    Attorneys' Fees under the Lanham Act

An award of attorneys' fees is available in "exceptional cases" under the Lanham Act. *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 111 (2d Cir. 2012). Until 2018, "the Second Circuit had historically limited 'exceptional cases' to those involving 'fraud or bad faith or willful infringement.'" *Omega SA v. 375 Canal LLC*, 2019 WL 2442434, at *3 (S.D.N.Y. June 12, 2019) (citing *LY USA*, 676 F.3d at 111). However, the Second Circuit, in *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519 (2d Cir. 2018), adopted the more flexible standard to determine the meaning of an "exceptional case" articulated by the Supreme Court in *Octane Fitness, LLC v. ICON Health & Fitness*, 572 U.S. 545, 554 (2014) (interpreting an identical attorneys' fees provision in the Patent Act, 35 U.S.C. § 285), holding that the same standard applied to the attorneys' fees provision in the Lanham Act, 15 U.S.C. § 1117(a). *See Sleepy's*, 909 F.3d at 530 (citing *Octane Fitness*, 572 U.S. at 554). Under the *Octane Fitness* standard, in order to determine whether the case is "exceptional," so as to merit an award of attorneys' fees, courts must "engage in a 'case-by-case exercise of their discretion, considering the totality of the circumstances' in determining whether the case is 'one that stands out from others.'" *4 Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202, 215 (2d Cir. 2019) (quoting *Octane Fitness*, 572 U.S. at 554).

### D.   Permanent Injunction

In the Second Circuit, "[a] district court has authority under the Lanham Act . . . to grant injunctive relief to prevent further violations of a plaintiff's trademarks." *Rovio Entertainment, Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 546 (S.D.N.Y. 2015). The plaintiff is entitled to a permanent injunction "if it can demonstrate: '(1) actual success on the merits and (2) irreparable harm.'" *Jamelis Grocery*, 378 F. Supp. 2d at 459 (quoting *Gucci America, Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 290 (S.D.N.Y. 2003)). In the Second Circuit, "a showing of a likelihood of confusion establishes irreparable harm." *Duty Free Apparel*, 286 F. Supp. 2d at 290 (citing *Genesee Brewing Co. v. Stroh Brewing Co.,* 124 F.3d 137, 142 (2d Cir.1997)). Thus, a prevailing plaintiff in a counterfeiting case is ordinarily entitled to an injunction. *See*, *e.g.*, *Jamelis Grocery*, 378 F. Supp. 2d at 459.

## III.   ANALYSIS

### A.   Statutory Damages

HBI has elected to pursue a statutory damages award, as permitted by 15 U.S.C. § 1117(c), based on Galaxy's sale of two different counterfeit RAW products: a pack of RAW KSS rolling papers and a RAW rolling tray. Pl. Mem. at 12. "Subsection 1117(c) provides trademark holders an alternative remedy to actual damages because 'counterfeiters' records are frequently nonexistent, inadequate, or deceptively kept[,] . . . making proving actual damages in these cases extremely difficult if not impossible.'" *Union of Orthodox Jewish Congregations of America v. American Food & Beverage Inc.*, 704 F. Supp. 2d 288, 290 (S.D.N.Y. Jan. 12, 2010) (quoting S. Rep. No. 104-177, at 10 (1995)). Here, liability has already been established. *See HBI I*, 408 F.3d at 526. Thus, the only question remaining is the amount of statutory damages to which HBI is entitled.

14

HBI seeks damages of $75,000 per trademark, per type of good sold. Pl. Mem. at 1, 12-22. According to HBI, each counterfeit product sold by Galaxy bore four trademarks, entitling it to a total of $600,000 ($75,000 times four trademarks times two types of goods). *See id.* at 13 (explaining that plaintiff "is entitled to damages for both the 4 RAW® Trademarks infringed in connection with the counterfeit RAW® KSS [rolling papers], and the 4 RAW® Trademarks infringed in connection the counterfeit RAW® trays").

The Court disagrees. On the facts of this case, an award of $75,000 per trademark, per type of good sold would be too high, and therefore not just. Moreover, HBI has not shown that "4 RAW® Trademarks" were infringed in connection with each counterfeit sale.

### 1.    Damages per Trademark, per Type of Good Sold

As noted above, the discretion of a district court, when awarding statutory damages under the Lanham Act, is limited only by "what the court considers just." *Pro's Choice Beauty Care*, 2016 WL 658310, at *3 (internal citations omitted). Courts within our Circuit look to the seven-factor *Fitzgerald* test, originally used to assess damages under the Copyright Act, for guidance in determining what is just under the Lanham Act. *See, e.g., Spin Master Ltd. v. Alan Yuan's Store*, 325 F. Supp. 3d 413, 425 (S.D.N.Y. 2018); *Zhen Zhen Weng*, 2014 WL 2604032, at *17; *Stark Carpet Corp. v. Stark Carpet & Flooring Installations, Corp.*, 954 F. Supp. 2d 145, 154 (E.D.N.Y. 2013); *All-Star Mktg. Grp., LLC v. Media Brands Co., Ltd.*, 775 F. Supp. 2d 613, 622 (S.D.N.Y. 2011); *Philip Morris USA Inc. v. A & V Minimarket, Inc.*, 592 F. Supp. 2d 669, 673 (S.D.N.Y. 2009). The seven factors, as applied in trademark cases, are: "(1) the expenses saved and the profits reaped by defendant; (2) the revenues lost by plaintiff; (3) the value of the mark; (4) the scale of defendant's infringement; (5) whether defendant's conduct was innocent or willful; (6) whether defendant has cooperated in providing particular records from which to assess the value of the

infringing material produced; and (7) the potential for discouraging defendant and others." *Z-Eleven Convenience Store*, 2018 WL 1521859, at *6 (citing *Fitzgerald Publ'g Co., Inc.*, 807 F. 2d at 1116-17). Additionally, "[a]lthough statutory damages need not match actual damages, courts generally hold that 'statutory damages should bear some relation to actual damages suffered.'" *Coach, Inc. v. O'Brien*, 2012 WL 1255276, at *2 (S.D.N.Y. Apr. 13, 2012) (collecting cases) (internal citations omitted).

With respect to the first and second *Fitzgerald* factors, the evidence is too sparse to permit a detailed analysis. The record shows only that: (1) on September 20, 2016, before the storefront opened, Galaxy bought two cases (60 boxes) of what purported to be RAW KSS rolling papers from My Import for $28.50 per box, Ghnaim Dep. Tr. Ex. 4; Ghnaim Damages Aff. ¶¶ 4-5; (2) HBI sells genuine RAW KSS rolling papers for between $38.70 and $40.50 per box, Pl. 56.1 Stmt. ¶ 3; and (3) on March 2, 2017, Galaxy sold a pack of counterfeit RAW KSS rolling papers for $2.00 and a counterfeit RAW rolling tray for $10.00. *Id.* ¶ 51.[8] From this evidence, it can be deduced that Galaxy saved from $10.20 to $12.00 per box by buying counterfeit KSS rolling

---

[8] HBI asserts that from May through December 2017, Galaxy bought "presumably counterfeit" RAW KSS rolling papers at an even lower price – as low as $22 per box – from Metro General. Pl. Mem. at 5; Pl. 56.1 Stmt. ¶ 47; Danta Decl. Ex. D (Dkt. No. 137-4), at ECF page 25. However, as noted above, the Metro General purchases all took place after March 2, 2017 (the only documented sale of counterfeit goods by Galaxy), and there is no evidence in the record, beyond the "suspiciously cheap" price charged by Metro General, Pl. Mem. at 19, that the rolling papers purchased from Metro General were in fact counterfeit. Similarly, there is no evidence in the record concerning the number of counterfeit rolling trays purchased by Galaxy, the price that it paid for them, or the prices charged by HBI for genuine RAW rolling trays.

papers from My Import rather than genuine product from HBI; that HBI correspondingly lost revenue of $38.70 to $40.50 per box; and that Galaxy made a gross profit of $71.50 on each box.[9]

HBI argues that the lack of evidence concerning the first and second *Fitzgerald* factors favors a substantial damages award, because Galaxy must "bear the uncertainty caused by [its] failure to keep sufficient records." Pl. Mem. at 15 (quoting *Philip Morris USA, Inc. v. Jackson*, 826 F. Supp. 2d 448, 453 (E.D.N.Y. 2011)). The Court agrees that Galaxy's poor recordkeeping cannot shield it from an otherwise just award. *See Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 972 (2d Cir. 1985) (where defendants refused to produce "any records" during discovery, they could not complain that the damages award was based on "insufficient evidence" and were instead required to "bear the burden of uncertainty"); *Hermes Int'l v. Kiernan*, 2008 WL 4163208, at *4 (E.D.N.Y. Aug. 28, 2008) (because seller of fake handbags "did not keep complete records of her sales," her profits "may have been significantly higher" than the figures to which she admitted). Thus, although Ghnaim testified that he only made one purchase from My Import, *see* Ghnaim Dep. Tr. at 115:18-22, I cannot assume that the counterfeit sales were limited to the 60 boxes shown on the single invoice produced, nor that Galaxy sold only one counterfeit rolling tray. However, shoddy record-keeping practices, standing alone, cannot justify a statutory damages award unsupported by the other *Fitzgerald* factors. *See*, *e.g.*, *Jackson*, 826 F. Supp. 2d at 453 (awarding a total of $200,000 in statutory damages for sales of counterfeit Marlboro cigarettes where, in addition to sparse records, there was "a strong indication of willfulness" and where "four

---

[9] There were 50 packs of KSS rolling papers in a box. Pl. 56.1 Stmt. ¶ 3.If Galaxy sold all of the counterfeit papers it acquired from My Import for $2 per pack, its revenue on each box was $100 (50 packs times $2), and its cost of goods sold was $28.50, leaving a gross profit of $71.50.

neighboring smoke shops had recently been caught selling counterfeit cigarettes obtained from unlicensed suppliers," which "further supports the need to deter future counterfeiting").

With respect to the third *Fitzgerald* factor – the value of the marks infringed – HBI has provided undisputed evidence that the RAW brand has "strong sales and a strong social media presence," as well as "strong consumer brand recognition," and that the RAW rolling papers have "consistently been reviewed as among the best" by third parties. Pl. 56.1 Stmt. ¶¶ 7-8. Moreover, Galaxy conceded, through Ghnaim, that RAW rolling paper is the most popular brand of rolling paper that Galaxy sells. Pl. 56.1 Stmt. ¶ 28; Ghnaim Dep. Tr. at 49:6-12. Even though HBI has not provided any "specific information" regarding the "monetary value" of the brand, therefore, the evidence is sufficient to support the conclusion that it is "valuable." *All-Star Mktg. Grp., LLC*, 775 F. Supp. 2d at 623; *see also Ontel Prods. Corp. v. Amico Intern. Corp.*, 2008 WL 4200164, at *3 (S.D.N.Y. Aug. 19, 2008) (finding plaintiff's trademark valuable even though "plaintiff failed to provide any detailed information concerning the value of its trademark"), *report and recommendation adopted*, 2008 WL 4298504 (S.D.N.Y. Sept.11, 2008).

The fourth *Fitzgerald* factor, however, weighs in favor of Galaxy. The smoke shop had been in business for only two months when HBI's investigator made the March 2, 2017 purchase of the two counterfeit items, Pl. 56.1 Stmt. ¶¶ 25, 51; Ghnaim Dep. Tr. at 11:23-12:22, 39:2-10, 40:25-41:9; less than five months when HBI brought suit on May 31, 2017; and less than ten months when Galaxy stipulated to a preliminary injunction, which was entered on October 11, 2017. Moreover, defendant "operated only one store, and there is no evidence regarding the profitability of that store." *Turn On Prods., Inc. v. Almost Famous Apparel, LLC*, 2019 WL 2436297, at *6 (E.D.N.Y. Apr. 12, 2019) (recommending an award of $10,000, despite defendant's initial "willfulness in infringing the mark," due to the "relatively small scale of defendants'

operation" and their later "efforts to terminate the infringing conduct"); *see also Jamelis Grocery*, 378 F. Supp. 2d at 458 (awarding $2,500 per infringed mark, for a total of $12,500, where defendants operated a single grocery store in the Bronx). Here too, the scale of the infringement was modest, such that an award on the scale requested by plaintiff would "'constitute a windfall for prevailing plaintiff[ ]' that courts have 'cautioned against awarding.'" *Turn On Prods.*, 2019 WL 2436297, at *7 (quoting *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 157–59 (E.D.N.Y. 2010)).[10]

The fifth *Fitzgerald* factor is "whether defendant's conduct was innocent or willful." *Z-Eleven Convenience Store*, 2018 WL 1521859, at *6. As explained in *HBI I*, plaintiff "has not established that the infringement was the result of intentional or willful conduct." 408 F. Supp. 3d at 526. Since HBI has not submitted any new evidence in connection with the present motion, there is no basis upon which the Court could now find willfulness for damages purposes.

With respect to the sixth *Fitzgerald* factor – whether the defendant has cooperated in providing relevant records – HBI contends that a substantial damages award is warranted because "the record abounds with evidence of Galaxy's non-cooperation." Pl. Mem. at 19; *see also* Pl. Reply Mem. at 6-7. Relying principally on *Diane Von Furstenberg Studio v. Snyder*, 2007 WL 3143690, at *6 (E.D. Va. Oct. 23, 2007), *aff'd,* 294 F. App'x 10 (4th Cir. 2008), HBI asserts that "the cooperation factor favors the plaintiff" where, as here, "a defendant fails to cooperate in the discovery process, and fails to take 'responsibility' for their actions." Pl. Mem. at 19.

---

[10] I note as well that there is no evidence of any online sales by Galaxy. *Cf. Alan Yuan's Store*, 325 F. Supp. 3d at 426 ("Courts . . . have supported an inference of a broad scope of operations in cases dealing specifically with websites that ship and sell to a wide geographic range, such as the websites on which defendants operate in this case.").

It is true that that "Galaxy's discovery responses were consistently slow and frequently incomplete," *HBI I*, 408 F. Supp. 3d at 529, requiring judicial intervention twice: to compel the production of additional documents (Dkt. No. 127), and to authorize HBI to take Galaxy's deposition, pursuant to Fed. R. Civ. P. 30(b)(6), out of time. (Dkt. No. 133.) However, when Ghaim appeared for that deposition, he was candid about his business practices and the records that he did or did not keep. Ghnaim Dep. Tr. at 229:2-232:9. Moreover, after taking Ghnaim's testimony, plaintiff made no further discovery complaints and sought no further discovery-related orders, seemingly preferring to keep the issue in reserve for use on summary judgment.

It is also true that Ghnaim has continued – bootlessly – to deny facts already resolved against Galaxy. For example, Ghnaim once again insists, in his most recent affidavit, that HBI's investigator did not purchase any products from Galaxy on March 2, 2017 – notwithstanding this Court's prior ruling to the contrary. *Compare*, *e.g.*, Ghnaim Damages Aff. ¶ 13 ("I have never sold product to their investigator") with *HBI I*, 408 F. Supp. 3d at 525 (plaintiff "established that an investigator purchased the counterfeits . . . from Galaxy's store on Myrtle Avenue on March 2, 2017"). The bulk of Ghnaim's affidavit, however, appears designed to defend himself against HBI's renewed (and similarly futile) contention that he acted willfully. *Compare*, *e.g.*, Pl. Mem. at 17 ("Galaxy Acted at Least With Willful Blindness") *with* Ghnaim Damages Aff. ¶ 8 ("I didn't have any idea that there were counterfeit RAW products in the market nor did I seek them out.").

*Snyder* involved significantly more egregious conduct. In that case, the defendant "purchased hundreds of fake designer dresses for resale," 2007 WL 3143690, at *5, typically from overseas vendors for under 10% of their retail price, and falsely advertised them online with the phrase "authenticity guaranteed," "despite the fact that she was not an authorized seller of [Diane Von Furstenberg] products." *Id.* at *1. Additionally, "[w]ithout obtaining permission," defendant

"appropriated photographs of models wearing DVF dresses from other websites and used them to illustrate her postings." *Id*. at *2. At trial, defendant "contradicted her deposition testimony," argued "that the dresses were not counterfeit," even after losing that issue on summary judgment, and "continually refused to take responsibility for her actions, claiming that "she had done nothing wrong." *Id*. at *6. Relying in part on the low level of defendant's cooperation – but more heavily on the "ample evidence" of willfulness, *id*. at *5-6 – the Eastern District of Virginia awarded plaintiff $100,000 (one sixth of the amount HBI seeks here) in statutory damages. *Id*. at *6.[11] In *Jamelis Grocery*, by way of contrast, the Southern District of New York limited statutory damages to $12,500 ($2500 per trademark, per type of good sold), even though defendants failed to "'come clean' about Jamelis Grocery's purchase and sale of NEWPORT®-brand cigarettes," failed to produce any documentation concerning their profits from the counterfeit cigarettes, and gave "unresponsive testimony during depositions").

With respect to the seventh *Fitzgerald* factor – deterrence – the Court does not doubt that the requested award of $75,000 per trademark, per type of good sold, would "deter Galaxy and others who might consider infringing on the RAW® Trademarks in the future." Pl. Mem. at 17. So would an award of $200,000 per trademark (the statutory maximum for non-willful infringement), which even HBI recognizes would be too high. In determining the quantum of damages necessary to deter a defendant from future infringement, "the key consideration is the

_____

[11] HBI also cites *Rolex Watch U.S.A., Inc. v. replicastoreonline.webs.com*, 2013 WL 5345904, at *4 (S.D.N.Y. Sep. 24, 2013), for the proposition that a substantial award of statutory damages is appropriate for "non-cooperating defendants." Pl. Mem. at 20. As in *Snyder*, however, the *resplicastoreonline* defendants ran a sophisticated internet-based operation through which they knowingly sold counterfeit products – and promptly created a new infringing website every time plaintiff was successful in shutting one down. *Id*. at *6.  Moreover, they did not merely fail to "cooperate" with Rolex; they "ma[de] repeated personal threats against Plaintiff's counsel, including threats of violence." *Id*. at *6. Those factors are simply not present here.

persistence of defendant['s] defiance of the requirements of the Lanham Act and of prior court orders enjoining further infringements." *All-Star Mktg. Grp., LLC v. Media Brands Co.*, 775 F. Supp. 2d at 624 (quoting *Polo Ralph Lauren, L.P. v. 3M Trading Co.*, 1999 WL 33740332 at *7 (S.D.N.Y.  April 19, 1999)); *see also Sara Lee Corp. v. Bags of NY, Inc.*, 36 F. Supp. 2d 161,  170 (S.D.N.Y. 1999) ("The failure of earlier, milder measures against the defendants highlight both the need for stronger deterrence and the need to redress the defendants' repeated efforts to defy and mislead the court.").

There is no evidence that Galaxy violated the preliminary injunction to which it stipulated, or any other "prior court orders enjoining further infringements." *3M Trading Co.*, 1999 WL 33740332 at *7. Moreover, where – as here – there is  "minimal" evidence of "actual harm to plaintiff," *Stark Carpet & Flooring*, 954 F. Supp. 2d at 156, and the defendant appears to have "limited financial means,"  *Jamelis Grocery,*  378 F. Supp. 2d at 458, a more modest sum will typically "serve both as a specific deterrent for Defendant and a general deterrent for others contemplating the infringement of valid trademarks." *Stark Carpet & Flooring*, 954 F. Supp. 2d at 156 (awarding $10,000 in statutory damages for willful infringement of plaintiff's trade name and trademarks for carpets); *see also Jamelis Grocery*, 378 F. Supp. 2d at 458 ($2500 per infringed mark was sufficient "to deter defendants and others who are similarly situated from engaging in the sale of counterfeit cigarettes, without being unnecessarily punitive"); *Philip Morris USA Inc. v. A & V Minimarket, Inc.*, 592 F. Supp. 2d 669, 673 (S.D.N.Y.) (awarding $2,000 in statutory damages against each of the 49 grocery stores and other small retail establishments sued for selling counterfeit Marlboro cigarettes, "to compensate Philip Morris for the losses it suffered and to deter the defendants and others from infringing on the marks in the future").

Having considered the seven *Fitzgerald* factors, the Court finds that a statutory damages award of $15,000 per trademark, per type of good sold, is just and warranted in this case, which more closely resembles *Jamelis Grocery* and *A & V Minimart* than the higher-dollar cases relied on by HBI.[12]

### 2.      Multiplier

According to HBI:

> [T]he court found that Galaxy infringed four (4) registered RAW® Trademarks in connection with (2) types of goods (rolling paper and rolling trays). [*HBI I*, 408 F. Supp. 3d at 525-26.] Accordingly, HBI is entitled to damages for both the 4 RAW® Trademarks infringed in connection with the counterfeit RAW® KSS, and the 4 RAW® Trademarks infringed in connection with the counterfeit RAW® trays.

Pl. Mem. at 13 (citation omitted).; *see also id.* at 12 ("the Court has found Galaxy used counterfeit versions of HBI's 4 registered RAW® Trademarks in connection with the sale, offering for sale, or distribution of 2 types of counterfeit RAW® goods, Raw® KSS and rolling trays."). In fact, no such finding was required or made in *HBI I*, which found only that both the rolling papers and the rolling tray purchased by plaintiff's investigator bore marks that were "nearly identical" to those used on authentic RAW products, and concluded that both products were "counterfeits." 408 F. Supp. 3d at 525. The Court did not count the number of trademarks on each product.

Nor does the record on the present motion support HBI's arithmetic. Plaintiff's Local Civil Rule 56.1 Statement does not state which marks appeared on the counterfeit RAW KSS rolling

---

[12] Almost all of the cases cited by HBI involve either high-priced luxury goods, *see, e.g.*, *Juicy Couture, Inc. v. Il Keun Oh*, 2010 WL 11523637, at *6 (C.D. Cal. Sep. 10, 2010); *Coach, Inc. v. Cellular Planet*, 2010 WL 2572113, at *3 (S.D. Ohio June 22, 2010); *Lane Crawford LLC v. Kelex Trading (CA) Inc.*, 2013 WL 6481354, at *4 (S.D.N.Y. Dec. 3, 2013), or high-tech products produced by Microsoft Corporation. *See, e.g.*, *Microsoft Corp. v. Atek 3000 Computer Inc.*, 2008 WL 2884761, at *3-4 (E.D.N.Y. July 23, 2008); *Microsoft Corp. v. Online Datalink Computer, Inc.*, 2008 WL 1995209, at *4 (S.D. Cal. May 6, 2008); *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 882 (S.D. Ohio 2007).

papers and which appeared on the counterfeit RAW rolling tray. It simply lists the four marks for which HBI seek damages:

    a.    U.S. Registration No. 2989221, for "RAW" in class 34 for "cigarette rolling papers made from processed paper, plastic or metal hand held cigarette rolling machines";

    b.    U.S. Registration No. 4412202, for "RAW" in class 34 for "cigar lighters; cigarette lighters not for land vehicles; lighters for smokers; lighters not of precious metal; Tobacco pouches; cigar humidors, rolling paper cases, shredders for tobacco and smokeable herbs not for industrial use; cigarette rolling trays, cigar rolling trays; tobacco storage boxes not of precious metal; pocket apparatus for rolling cigarettes, namely, scoops to assist in the rolling of one's own cigarette";

    c.    U.S. Registration No. 4325822, for "RAW ARTESANO" in class 34 for "Cigarette rolling papers, cigarette filters, cigarette rolling trays"; and

    d.    U.S. Registration No. 4647824, for "RAW ORGANIC HEMP AUTHENTIC PUREST NATURAL HEMP FIBERS UNREFINED RAY NATURAL UNREFINED HEMP ROLLING PAPERS" in class 34 for "cigarette paper; cigarette papers; cigarette rolling papers; all of the foregoing made from natural, organic hemp."

*See* Pl. Rule 56.1 Stmt. ¶¶ 19; *see also* Kobe Decl. ¶¶ 24-25 (same).[13] The Hood declaration attaches an image of the two counterfeit products, *see* Hood Decl. Ex. A (Dkt. No. 11-1) at ECF page 2, but does not discuss which marks appear on which product.

    Absent evidence of which marks were infringed by each product, the Court cannot simply multiply the total number of "types of goods" sold (two) by the total number of potentially applicable  trademarks owned by HBI (four). Rather, under 15 U.S.C. § 1117(c), it must determine

---

[13] HBI also owns U.S. Registration No. 3422929, for "Cigarette rolling papers." Pl. 56.1 Stmt. ¶ 22 (describing Nos. 3422929 and 4647824 as together comprising the "Registered RAW Trade Dress"). On the present motion, however, HBI does not appear to seek damages for the infringement of No. 3422929, or, more generally, for infringement of its trade dress.

the number of trademarks infringed by *each* type of good sold. Thus, in *Zhen Zhen Weng*, 2014 WL 2604032, at \*16, the court found that defendants "infringed fourteen (14) marks on six (6) types of goods," but awarded damages for a total of only 24 "separate infringements" (not 84, which is 14 times 6). Moreover, because HBI has failed to specify in its Local Rule 56.1 Statement (or the underlying declarations) how many trademarks were infringed by each of the counterfeit products sold, the Court is under no obligation to scour the record to determine which trademarks correlate to which counterfeit product. *See Z-Eleven Convenience Store*, 2018 WL 1521859, at \*7 (applying a multiplier of eight where plaintiff submitted 16 registered marks, which "it globally allege[d]" were all infringed, but "did not explain, on a mark-by-mark basis, how the [defendants' signage] infringe[d] upon each of the protected marks"); *see also Chanel, Inc. v. Louis*, 2009 WL 4639674, at \*4 (E.D.N.Y. Dec. 7, 2009) ("[T]he plaintiffs placed the burden on the court to determine which bags and images from various website printouts correlated to which registered copyrights, a burden the Magistrate Judge properly declined to shoulder."); *Chanel, Inc. v. Gardner*, 2011 WL 204911, at \*3 (S.D.N.Y. Jan. 21, 2011) ("Magistrate Judge Dolinger reasonably calculated the statutory damages based on the six trademarks for which Plaintiff provided adequate proof of infringement, rather than the sixteen initially asserted.").

In this case, the only registered trademark that could have been infringed by the sale of the counterfeit rolling tray was No. 4412202, for "RAW," which covers, among other things, "cigarette rolling trays." Pl. Stmt. 56.1 ¶ 19(b).[14] Similarly, of the four registered trademarks listed in plaintiff's Local Civil Rule 56.1 Statement, the only one that could have been infringed by the sale

---

[14] No. 4325822, for "RAW ARTESANO," also covers "cigarette rolling trays," but the phrase RAW ARTESANO cannot be seen on the image submitted to the Court of the cigarette rolling tray purchased from Galaxy. *See* Hood Decl. Ex. A (Dkt. No. 11-1) at ECF page 3.

of the counterfeit rolling papers was No. 2989221, for "RAW," which covers, among other things, "cigarette rolling papers made from processed paper." Pl. 56.1 Stmt. ¶ 19(a).[15] As a result, the Court has determined the appropriate multiplier in this matter is two, because the evidence shows that the sales of the counterfeit RAW rolling tray and the counterfeit rolling papers infringed one trademark each. The Court therefore awards damages in the total amount of $30,000.

### B.    Attorneys' Fees

"[A]n 'exceptional' case," for purposes of a fee award under 15 U.S.C. § 1117(a), "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Sleepy's*, 909 F. 3d at 530 (quoting *Octane Fitness*, 572 U.S. at 554). District courts are encouraged "to evaluate the totality of the circumstances, considering a wide range of factors, including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Id.* (quoting *Octane Fitness*, 572 U.S. at 554 n.6).

HBI argues that this is an "exceptional case" because of Galaxy's "weak litigation position and its dilatory discovery conduct." Pl. Mem. at 22. Galaxy had a weak litigation position, according to HBI, because it did not challenge the validity of the HBI trademarks and "did not raise a serious defense that the invoice obtained by HBI in connection with the counterfeit sale

---

[15] No. 4325822, for "RAW ARTESANO," covers "cigarette rolling papers," but the phrase RAW ARTESANO cannot be seen on the image submitted to the Court of the cigarette rolling papers purchased from Galaxy. *See* Hood Decl. Ex. A (Dkt. No. 11-1) at ECF page 3. No. 4647824, for "RAW ORGANIC HEMP AUTHENTIC PUREST NATURAL HEMP FIBERS UNREFINED RAY NATURAL UNREFINED HEMP ROLLING PAPERS," covers cigarette papers "made from natural, organic hemp." There is no reference to "hemp" on the image of the counterfeit "CLASSIC" rolling papers submitted to the Court, *see id.*, nor any evidence in the record that plaintiff's "CLASSIC" papers were made of hemp.

was not authentic." *Id*. If a Lanham Act plaintiff has a valid and enforceable trademark, however, it is not a "weakness" to defend the case on other grounds. And while Galaxy's attempt to deny the authenticity of the investigator's invoice failed, *see HBI I*, 408 F. Supp. 3d at 525-26, defendant succeeded in denying HBI summary judgment as to willfulness. *Id*. at 526-29. Thus, I do not find Galaxy's litigating position to have been "exceptionally meritless" compared to "mine run cases" under the Lanham Act. *Octane Fitness*, 572 U.S. at 555.

Galaxy's discovery conduct was, to be sure, "dilatory." Pl. Mem. at 22; Pl. Reply Mem. at 6. Moreover, its summary judgment briefing, both as to liability and as to damages, has been woefully inadequate, and in certain respects (for example, the continued attempt to deny facts already determined by the Court) counterproductive. *See HBI* I, 408 F. Supp. 3d at 515 n.3; *supra* at n.5. This Court declines to hold, however, that these failings – all too common when a small business, sued in federal court, lacks the means to hire more competent counsel – rendered defendant's litigation conduct so "unreasonable," Pl. Reply Mem. at 6, as to warrant the label "exceptional" and entitle plaintiff to attorneys' fees.[16]

Once again, this case is quite different from the decisions on which plaintiff relies in its briefs. For example, in *San Diego Comic Convention v. Dan Farr Prods.*, 2019 WL 1599188 (S.D. Cal. Apr. 15, 2019), *aff'd in part, vacated in part on other grounds, and remanded*, 2020 WL 1910726 (9th Cir. Apr. 20, 2020), the district court's award of attorneys' fees to plaintiff was not based solely on the fact that defendant DFP (which, like Galaxy, escaped a willfulness finding) "restated and rehashed contentions already decided by the court." Pl. Reply Mem. at 6. DFP

---

[16] In this Court's view, some of HBI's litigation positions could also be characterized as "unreasonable," including its mischaracterization of the Court's prior decision as to the number of trademarks infringed and its request for an eight-fold multiplier without evidence that each of the two infringing products bore all four of its relevant marks.

engaged in varied and aggressive misconduct, beginning with the filing of "two summary judgment motions that totaled over 40 pages in length[,]" violating the local rules governing page length and argument-splitting. *Dann Farr*, 2019 WL 1599188, at *3. In this case, by contrast, Galaxy did not file any motions at all.[17] In *Dann Farr*, DFP's meritless motions included a *limine* motion that attempted to relitigate the court's previous denial of its challenges to two of plaintiff's expert witnesses. *Id.* at *4. In this case, although Galaxy improperly recycled a previously-rejected factual argument in opposition to the present motion, it did so only in an affidavit, *see* Ghnaim Damages Aff. ¶ 12, which did not require plaintiff to oppose (or the Court to adjudicate) repetitive motions. Most egregiously in *Dan Farr*, DFP filed a motion for leave to amend that "expressly referenced testimony designated 'Confidential – Attorneys' Eyes Only'" pursuant to a court-issued protective order, after which defendant Brandenberg "disseminated the information on the Internet through his social media accounts and [plaintiff's] Twitter Page." 2019 WL 1599188, at *3. In this case, although Galaxy's litigation misconduct was troubling, it was of a different order of magnitude.

*Home Show Tours, Inc. v. Quad City Virtual, Inc.*, 840 F. Supp. 2d 1150 (S.D. Iowa 2012), is similarly inapposite. In that case, the party that "kept submitting vexatious filings" (Pl. Reply Mem. at 7) was the plaintiff, which filed a "groundless" lawsuit, followed by a meritless TRO motion, and then amended its pleading twice to add new claims, including antitrust claims providing a potential treble damages remedy. *Id.* at 1151-52. After granting summary judgment for defendant QCFSBO, *id.* at 1152, the court agreed that the case was exceptional, warranting a fee award, because plaintiff "simply defaulted to its complaint" when faced with QCFSBO's

---

[17] On July 7, 2017, Said Ghnaim wrote a letter to the Court stating that Galaxy could not afford legal counsel and asking that "we be allowed to represent ourselves." (Dkt. No. 53.) Thereafter, attorney Forcina appeared on Galaxy's behalf.

summary judgment motion – after pleading its claims aggressively, conducing vigorous discovery, and being told by the court that its allegations were insufficient. *See id*. at 1155 ("[I]t was at that point . . . [that] this became an 'exceptional case' under § 1117(a) of the Lanham Act and an award of fees accruing from the time QCFSBO moved for summary judgment motion forward is appropriate."). *See also Benihana of Tokyo, LLC v. Benihana, Inc.*, 2018 WL 3574864, at *11 (S.D.N.Y. July 25, 2018) (awarding attorneys' fees to defendant where plaintiffs, who initiated the litigation by requesting a declaratory judgment that they did not violate the Lanham Act, "brought and pursued this case in bad faith with the admitted ulterior goal of driving up [defendant's] legal expenditures, all the while engaging in further violative conduct"), *aff'd,* 771 F. App'x 71 (2d Cir. 2019).

Given the "totality of the circumstances" discussed above, *Octane Fitness*, 572 U.S. at 554, the Court does not find the case at bar to be "exceptional," and therefore will not award attorneys' fees to the prevailing plaintiff.

### C.      Permanent Injunction

Finally, HBI seeks an order permanently enjoining Galaxy from future conduct infringing upon the RAW® Trademarks and RAW® Trade Dresses. Pl. Mem. at 25; *see also* Prop. Inj. (Dkt. No. 145-1).

Plaintiff has already prevailed on the merits. Thus, the Court has the authority to grant injunctive relief "to prevent further violations," *Rovio Entertainment*, 97 F. Supp. 3d at 546, after considering "(1) the likelihood that plaintiff will suffer irreparable harm if an injunction is not granted; (2) whether remedies at law such as monetary damages are inadequate to compensate plaintiff for that harm; (3) the balance of hardships; and (4) whether public interest would not be

disserved by a public injunction." *Id.* at 547 (citing *Salinger v. Colting*, 607 F. 3d 68, 77-78 (2d Cir. 2010)).

All of these factors support the entry of a permanent injunction here. Since the counterfeit products in this case are difficult to identify as counterfeit, *see HBI I*, 408 F. Supp. 3d at 525, there is clearly potential for consumers to be misled, which in turn would cause HBI irreparable harm. Accordingly, the first factor favors entry of a permanent injunction. *See Rovio Entertainment*, 97 F. Supp. 3d at 547; *Off-White LLC v. ^_^Warm House^_^Store*, 2019 WL 418501, at *4 (S.D.N.Y. Jan. 17, 2019) (quoting *Lobo Enters., Inc. v. Tunnel. Inc.*, 822 F. 2d 331, 333 (2d Cir. 1987)) ("In a trademark case, irreparable injury is established where 'there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question.'"); *Duty Free Apparel*, 286 F. Supp. 2d at 290 ("a showing of likelihood of confusion establishes irreparable harm").

The second element also weighs in favor of a permanent injunction, as it is difficult to measure the precise amount of monetary damages that HBI has suffered and would suffer from continued infringement of its trademarks. "Because the losses of goodwill and resulting loss of customers are not precisely quantifiable, remedies at law cannot adequately compensate Plaintiff for its injuries." *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 541 (S.D.N.Y. 2011); *see also WPIX, Inc. v. ivi, Inc.*, 691 F. 3d 275, 286 (2d Cir. 2012) (where plaintiffs' losses are difficult to measure, fairness weighs towards granting injunction rather than forcing the plaintiff to resort to monetary relief that can be difficult to quantify). Further, it is unclear whether HBI would be able to collect a substantial damage award from Galaxy, should future violations occur. *WPIX*, 691 F. 3d at 286 (citing *Omega Importing Corp. v. Petri–Kine Camera Co.*, 451 F. 2d 1190, 1195 (2d Cir.1971)).

With respect to the third element, it is "axiomatic that an infringer … cannot complain about the loss of ability to offer its infringing product." *Rovio Entertainment*, 97 F. Supp. 3d at 547 (internal citations omitted).

Finally, "the public has an interest in not being deceived – in being assured the mark it associates with a product is not attached to goods of unknown origin and quality." *N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010). Accordingly, a permanent injunction is warranted.

## IV.    CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment as to damages is GRANTED to the extent that judgment shall be entered in in favor of BBK Tobacco & Foods, LLP d/b/a HBI International and against defendant Galaxy VI Corp. d/b/a Galaxy Wholesale in the amount of $30,000 on the First and Second Claims in plaintiff's Amended Complaint, and defendant is permanently enjoined from selling, offering for sale, or distributing rolling papers, rolling trays, or other smoking products bearing counterfeit reproductions of plaintiff's registered trademarks.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 145 and terminate this action.

Dated: New York, New York
       May 31, 2020

SO ORDERED.

**BARBARA MOSES**
**United States Magistrate Judge**